James McKecknie et al., Respondents, *v.* George R. Ward, impleaded, etc., Appellant.

A contract of suretyship for the performance, by a vendee, of a continuing agreement of purchase and sale, by which goods purchased from time to time as required are to be paid for at stated periods, is not discharged by mere forbearance on the part of the vendor to enforce payment as provided for by the contract, without a binding agreement for extension of time. Beyond the bare neglect of the creditor to enforce payment, there must be some act of connivance on his part in a fraud upon the surety, or of negligence so gross as to amount to a fraud.

*Phillips* v. *Foxall* (L. R. [8 Q. B.], 666) and *Sanderson* v. *Aston* (L. R. [8 Exch.], 738) distinguished.

Nor is it the duty of the vendor to give notice to the surety of the amount of the purchases and of the failure of the vendee to make payment at the times specified, until a reasonable time after default, which depends upon the circumstances of each case ; and in any event failure to give notice will not discharge the surety further than he has sustained damage in consequence of the neglect.

Defendant B., as principal, and W., as surety, executed a bond conditioned for the performance by B. of a contract between him and plaintiffs, by which, as recited in the bond, plaintiffs agreed " to let to B. the agency for the sale of their ale " in the city of S., on the condition that B. should pay " on the first of each and every month for amount of ale delivered," B. not to purchase any other ale ; the contract to be terminated by either party by giving three months' notice. *Held*, that the relation of plaintiffs and B. under the contract was that of vendor and vendee, not of principal and agent, and that a complaint in an action upon the bond, alleging sales and deliveries to B. under the contract, and assigning as breaches of the condition non-payment therefor, was sufficient, and proof thereof established a cause of action.

In determining whether a point relied upon on appeal was raised in the trial court, the issues presented by the pleadings are not conclusive,

where evidence upon which the point is taken was received upon the trial without objection, that it was not within the issues. The question is to be determined from the pleadings, the case made, the findings, the exceptions taken, or from all these as the case may be.

(Argued September 23, 1874; decided November 10, 1874.)

Appeal by defendant Ward, from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment in favor of plaintiffs, entered upon the report of a referee.

This action was brought upon a bond in the penalty of $2,000, executed by the defendant. It recited an agreement between plaintiffs and the defendant Barnes, as follows:

" The said James and Alexander McKecknie agree to let to the said E. W. Barnes, the agency for the sale of their ale in the said city of Syracuse, on the following conditions : The said E. W. Barnes agrees to receive the ale at the Central Railroad depot in Syracuse, and to pay the freight on the same, and to pay to said James and Alexander McKecknie, or to some party authorized by them, on the first of each and every month, for amount of ale delivered, at a price of one dollar less per barrel than the sum fixed by the said James and Alexander McKecknie for selling such ale after deducting amount paid for freight, and no allowance for ale soured or spoiled shall be made, unless it shall appear that it has been caused by the negligence of the said James and Alexander McKecknie; the said E. W. Barnes further agrees not to purchase any other ale than the said ale manufactured by the said James and Alexander McKecknie, and known as the Canandaigua ale ; the said E. W. Barnes also agrees to deliver all empty barrels at the Central Railroad depot free of charge, and to be accountable for all barrels not so delivered ; and it is further agreed that either party of this contract may at any time terminate this agreement by giving three months' notice to that effect."

The bond was conditioned for the performance of said agreement on the part of Barnes. The complaint, after setting forth the bond, alleged in substance that plaintiffs, at

various times thereafter, sold and delivered large quantities of ale, and received various payments thereon, leaving a balance of $12,665.78 due and unpaid, which sum, before the commencement of the action, they demanded, and alleged as breaches of the condition of the bond the non-payment on the first of every month as agreed.

The referee found that, after the execution and delivery of the bond, the plaintiffs commenced delivering ale to Barnes, under and in pursuance of the same, and, up to the 1st day of January, 1869, the quantity of ale delivered, at the prices fixed by the agreement, amounted to $24,842; that the said Barnes made payments on account thereof, from time to time, but not sufficient to pay for the same in full. And his indebtedness on that account gradually increased up to the 1st of January, 1869. On or about the 1st day of January, 1869, plaintiffs and Barnes accounted together, when there was found due to the plaintiffs from Barnes a balance of $9,000. The plaintiffs thereafter continued to deliver ale under the contract, until about the 5th day of April, 1870. That, after the settlement in 1869, the ale so delivered by the plaintiffs amounted in value to the sum of $17,818.50. That, after said settlement, the defendant Barnes paid to the plaintiffs, to apply on his said account, the sum of $15,800. That there was due to plaintiffs a balance of $11,018.50. That, prior to the commencement of this action, notice of the default of Barnes was given to the defendant Ward, and that the plaintiffs would look to him for the amount mentioned in the bond. And, as a conclusion of law, he found that the plaintiffs are entitled to recover of the defendants the sum of $2,000, with interest thereon from the time of the commencement of this action.

*Geo. F. Danforth* for the appellant. The defendant Ward simply obligated himself that Barnes should perform his duties as agent, and is not to be held beyond the precise stipulations of his undertaking. (*Gates* v. *McKee,* 13 N. Y., 237; 43 id., 245; *Montague* v. *Tidcombe,* 2 Vern., 518.) The complaint is

insufficient. (*Davis S. M. Co.* v. *Lawrence*, 3 N. Y. S. C., 389; *Carkin* v. *Savary*, 14 Gray, 528.) Plaintiffs could not, therefore, recover upon their complaint. (*Bristol* v. *R. and S. R. R. R. Co.*, 9 Barb., 158; *Wright* v. *Delafield*, 25 N. Y., 266.) Plaintiffs having continued shipments after discovering Barnes' default waived the condition of the guarantee and the surety was discharged. (*Clark* v. *Remington*, 11 Metc., 361; 35 Barb., 484; 8 Gray, 211; 15 Ind., 144; 15 Gray, 270; *Hunt* v. *Roberts*, 45 N. Y., 691.) Retaining Barnes in their employ after knowledge of his defalcation as agent, and omitting to give notice of such defalcation to defendant Ward, discharged him. (31 Penn., 110; 29 Ala., 288; 25 id., 139; 3 N. Y., 213; 1 Story's Eq. Jur., § 215; *Smith* v. *Bk. of Scotland*, 10 Cl. & F., 934–943; *Railton* v. *Matthews*, 1 Dow., 272–292; *Lee* v. *Jones*, 17 C. B. [N. S.], 482–500; *Phillips* v. *Foxall*, L. R. [7 Q. B.], 672; *Burgess* v. *Eve*, L. R. [13 Eq.], 450; *Hunt* v. *Roberts*, 45 N. Y., 691; *Sanderson* v. *Aston*, L. R. [8 Exch.], 73; Fell on Guar., 245.) Plaintiffs' omission to call for an accounting or to enforce payment discharged the security. (*Craft* v. *Isham*, 13 Conn., 28; *Montague* v. *Tidcombe*, 2 Vern., 518.) After the first default, on the part of the principal, plaintiffs were bound to stop furnishing goods to him. (*Miller* v. *Mariners' Church*, 7 Greenl., 51; *Shannon* v. *Comstock*, 21 Wend., 461; *Heckscher* v. *McCrea*, 24 id., 309; *Clark* v. *Marsiglia*, 1 Denio, 317; *Spencer* v. *Holstead*, id., 606; *Loker* v. *Damon*, 17 Pick., 284.)

*Henry M. Field* for the respondents. The bond was a continuing obligation. (*Gates* v. *McKee*, 13 N. Y., 232; *Bridge* v. *Judson*, 24 id., 64.) Plaintiffs were entitled to interest after default. (*Brainard* v. *Jones*, 18 N. Y., 35; *Emerson* v. *Booth*, 51 Barb., 44.) No questions can be presented in this court for review which were not presented and decided in the court below. (*Vose* v. *Cockroft*, 44 N. Y., 415; *Delaney* v. *Brett*, 51 id., 78; *Home Ins. Co.* v. *West. Tr. Co.*, id., 93.)

Folger, J. I do not think that the first point made by the appellant is tenable. The agreement between the plaintiffs and Barnes did not create the relation of principals and agent; the scope of it shows an intention to give to him a monopoly, at Syracuse, of the purchase from them and of the sale to others of their ale; and to them a monopoly of his services in the sale of that article. He had not to them the liability of an agent. His liability was that of a vendee. They were bound, impliedly at least, to deliver to him all the ale that he called for. He was bound to pay for all that they delivered. As soon as it was delivered to him it ceased to be their property; it became at once his, and he was thereupon bound to pay for it. They could not recall it, nor interfere in any way in the disposition of it by him. He could not (unless it was sour through their neglect) throw it back upon them. If it remained on his hands unsold, if it deteriorated otherwise than by their neglect, if it was destroyed by casualty, if his vendees failed to pay, it was not the loss of the plaintiffs; it was his. He acted with the ale, after its delivery to him, in his own right and from his own intrinsic authority over it; his power so to do was not, thereafter, derived at all from them. The use of the phrase, "let the agency," in the agreement, is not so indicative of purpose nor so stringent in effect, as to master the clear indication of the intention of the parties, as it is gathered from the whole instrument and all its provisions read together. It is an agreement for a continuous sale and purchase, that the plaintiffs shall sell to no other, that Barnes shall buy of no other, that he would pay for all that was delivered at stated times, and that either party might terminate the agreement upon a certain notice.

This being so, the point made by the appellant, subordinate to the first point, that the complaint is insufficient in its statement of facts, is also untenable. The appellant is not the surety for the honesty of Barnes as an employe or agent. He is surety that the merchandise sold and delivered to him shall be paid for up to the limit of $2,000. The complaint

in the allegation of sales and delivery to Barnes, and of non-payment by him, avers transactions within the terms of the agreement and within the obligation of the appellant; it sets forth, in this respect, facts sufficient to show a cause of action against both defendants. The proofs under it and the findings of the referee make a cause of action against them both, unless the second main point made by the appellant may be maintained.

It is contended by the plaintiffs that this second main point cannot be made here, inasmuch as it was not raised at the trial. It is not always easy for this court· to determine whether or not a point made before it, is here raised for the first time. Where the parties do not agree as to it this court can only determine how the fact is, from the pleadings, or the case made, or the findings, or from the exceptions taken, or from all these things. It is certain that the answer of the defendants in this case does not set up the defence involved in the point made. But this is not conclusive, because the evidence upon which the point is taken was received at the trial, without objection that it was not within the issue. (*McKnight* v. *Devlin,* 52 N. Y., 399; *Jackson* v. *Van Slyke,* id., 645.) It is quite as certain that the evidence is full upon the state of facts which the appellant claims have worked his discharge, and that the findings of the referee sufficiently set forth that state of facts. The appellant has excepted to the conclusion of law from these findings, viz., that the plaintiffs are entitled to recover of both of the defendants; and this exception covers the point now under notice. The evidence, the findings and the exception, are sufficient to have allowed the question to have been presented. The opinion of the referee does not notice it. This is not conclusive that it was not presented to him. And, on the whole, we are not able to say that the point was not made in the court below. It is therefore to be passed upon.

The point is, that the conduct of the plaintiffs, in allowing the account of Barnes, for ale sold and delivered, to go on from month to month for three years, without exacting pay-

ment, according to the terms of the agreement, they all the while knowing that his indebtedness was large and increasing, and in omitting to give notice to the appellant thereof, operated to discharge the appellant from his suretyship. This point is two-fold: First, it presents the effect of the indulgence given to Barnes by the plaintiffs; it asserts that it was their duty to the appellant, to insist upon and enforce payment from Barnes, of each month's payment as it became payable, or in a reasonable time thereafter. If the contract of the appellant was one that Barnes should pay to the plaintiffs a single certain sum on a certain day, or a gross ascertained sum, in installments, on given days, such duty would not rest upon the plaintiffs. Mere forbearance, or omission of the creditor to sue will not, in such case, discharge the surety, unless the creditor be under some obligation to sue, or unless forbearance would prejudice the claim of the surety upon the principal and thereby work his injury. There must be some binding agreement between the creditor and the principal, giving time, whereby the former has tied his hands, so that he cannot proceed to collect, before such forbearance will affect his claim upon the surety. (*Orme* v. *Young*, 1 Holt N. P. R., 84; *Herrick* v. *Borst*, 4 Hill, 650; *Brown* v. *Curtiss*, 2 N. Y., 225.) The contract of suretyship is, however, different here. It is not for the payment of a definite sum at a given day; it is for a continuing transaction, contemplating a recurring indebtedness, to be made and extinguished monthly, renewable as often and as soon as paid. Yet the older authorities hold that in such case, also, mere indulgence shown by the creditor to the principal, without a binding agreement for an extension of time for payment, does not discharge the surety. In *The Trent Navigation Co.* v. *Harley* (10 East, 34) the bond, dated in 1799, was conditioned that the principal should, as long as he continued collector of the tolls of the plaintiff, render true accounts, and from time to time pay over all moneys when required. It appeared upon the trial that he was, in 1807, called to account, and was indebted to the plaintiff above £1,000, which he could not pay, and that

the state of his account might have been found out every year. It was held that the laches of the creditor, in not calling upon the principal as soon as it might have done, if the accounts had been properly examined from time to time, was not an estoppel at law in favor of the sureties, whatever remedy there might be *in equity.* In commenting upon this decision, in *The People* v. *Jansen* (7 J. R., 331), THOMPSON, J., says : " If the principle intended to be laid down is that mere delay in calling upon a principal will not discharge the surety, it is a sound and salutary rule both at law and in equity." (And see *Schroeppell* v. *Shaw*, 3 N. Y., 446.) In *The London Assurance Co.* v. *Buckle* (4 J. B. Moore, 153), there was a bond in a penalty of £2,000, dated in 1811 ; it was conditioned that the principal should, as insurance broker, make insurances from time to time with the plaintiff, at a credit of six months for the payment of the premiums, and if he should pay the premiums as the same became due and payable (*i. e.*, every six months), the bond should be void. He effected policies from January, 1811, to April, 1813, and the total amount of premiums was £5,000 and over. In 1814 he made a payment; in 1815 two payments; in August, 1816, he applied certain losses he had sustained as insuree, and was found indebted in a balance of £2,000 and over. No notice was given to the sureties until July, 1816. It was held, that though the principal was not called upon at the end of six months for payment, the sureties were not discharged, and that no principle of the common law would carry it to such extent. And so, in equity, the case of *Eyre* v. *Everett* (2 Russell, 381), shows that delay to prosecute will not discharge the surety to a bond in a limited amount, though the creditor continue to deal with the principal and give him new credit on another obligation. See, also, *Goring* v. *Edmonds* (6 Bingham, 94) ; *Nares* v. *Rowles* (14 East, 520) ; *Peel* v. *Tatlock* (1 Bos. & Pull., 419) ; *Creighton* v. *Rankin* (7 Cl. & Fin., 346) ; some of which are cases where the principal was under the duty of making periodical accountings and payments to the creditor or obligee,

and the latter did not enforce the performance of that duty at the time when he might have done so.

The decisions in this State are to the same result. The contrary doctrine did, indeed, receive some support, at one time, from the decision in *The People* v. *Jansen* (7 J. R., 331), which held that the sureties on the bond of a commissioner of loans were discharged by the omission of the board of supervisors to compel payment from him. But that case has not been followed, and another result was reached in *The People* v. *Berner* (13 J. R., 383); *The People* v. *Foot* (19 id., 58); *The People* v. *Russell* (4 Wend., 570); and see, also, *Jones* v. *United States* (18 Wall., 662), and cases there cited; and *Looney* v. *Hughes* (26 N. Y., 514). But these authorities are not directly in point here, for they go upon the ground that provisions of law requiring action from one public officer supervisory of the conduct of another are for the benefit of the public only, are in general directory only, and form no part of the contract of sureties with the government. And an analogous rule has been some times applied to the case of a corporation, where one of its officers has been negligent in his supervision of the accounts of another, and the sureties of the latter have set up the *laches* of the former as fault toward them on the part of the corporation. But in *Albany Dutch Church* v. *Vedder* (14 Wend., 166), it was held that the obligees in a bond, given for the faithful discharge of the duties of a treasurer of a religious corporation, are under no legal obligation to watch over the conduct of their officer, to examine into his accounts at stated periods, and in case of default to adopt measures calculated to relieve his sureties. This case is cited as authority in 26 New York (*supra*). (See, also, *Schroeppell* v. *Shaw*, 3 N. Y., *supra*.) I think that the conclusion must be, that the rule (formerly, at least), prevailing in England, and held in this State, is, that the mere indulgence of the creditor in such a case as this will not discharge the surety; that beyond the bare neglect of the creditor to enforce payment or performance from the principal, there must be some act of connivance or gross negligence

amounting to willful shutting of the eyes to the fraud. (See *Black* v. *Ottoman Bank*, 10 Weekly Rep., 871; *McTaggart* v. *Watson*, 3 Cl. & Fin., 529; *Dawson* v. *Lawes*, 1 Kay, 280; *Douglass* v. *Howland*, 24 Wend., 35.)

1 have dwelt longer upon this topic than would have been necessary, but for the strong reliance placed by the appellant upon certain later cases cited by him from the English reports, and which, as used by him, are in real or seeming conflict with this conclusion. The first of these cases is *Burgess* v. *Eve* (L. R. [13 Eq. Cas.], 450, Jany. 1872), in which the question principally discussed is, whether the guarantor of the fidelity and honesty of another, may revoke his guarantee on discovery of the faithlessness and dishonesty of his principal; and the conclusion is that he may. This case is of importance here, only as it bears upon the next case to be noticed, and as it is relied upon by the appellant as an authority that he might have discontinued his liability at any time. The next case is *Phillips* v. *Foxall* (L. R. [7 Q. B.], 666, July, 1872). There the defendant was a surety to the plaintiff for the honesty of his principal, who was a servant of the plaintiff, and had the collection of money for her. The principal was guilty of defalcations in the course of his employ, between June and November, 1869. In the last month, his mistress having discovered his misconduct, without notifying his surety, and while the surety was ignorant of it, agreed with the principal that he should continue in her employ as before, and should make certain monthly payments upon his defalcation. The service then went on, and the principal again misapplied to his own use the money of his mistress. She then called upon the surety and sued him upon his obligation. He pleaded these facts, and claimed that, by reason of lack of notice from the plaintiff of the defalcation first made, he was prevented from revoking his guarantee, and from compelling the principal to pay the money abstracted, and was not liable to pay for the recent defalcation of his principal. The plea was held good. The decision is put upon these grounds: That if the dishonesty of the principal

had occurred, to the knowledge of the mistress, before the making by the surety of his obligation, the concealment of it from him would have been a fraud upon him, which would have relieved him from liability on his subsequent contract; that as this was a continuing guarantee, and the obligation of the surety continuing, the duty of the creditor was also continuing; and that he was as much bound to inform of dishonesty coming to his knowledge after the making of the contract as before. These were the reasons of a majority of the court. One of the judges concurred in the judgment with hesitation, but upon the ground, that the right of a master to dismiss a servant on discovery of his dishonesty, is one of the remedies which a surety for the servant has a right to call upon a master to use; that when a master condones an act of dishonesty, and keeps a servant in his employ he has lost his right to discharge therefor, and thus has thrown away one of the remedies of the surety; and if without notice to him, then without his assent; and that thus the surety is discharged.

It is to be observed, of this case, that the court did not announce their decision, as applicable to a surety for a debt or like liability, but to a surety for the honesty of a servant; nor did the court notice (which is singular), any of the English cases above cited, except *Peel* v. *Tatlock*, which is spoken of as a case of a servant's embezzlement. So far as the case rests upon the right of a surety to revoke the obligation given by him, that question has been decided by this court in *Hunt* v. *Roberts* (45 N. Y., 691). It was there held, that a default by the principal in the performance of his contract by the time specified, was a breach thereof, and that on the occurrence of a breach on the part of the principal, the surety had a right to insist upon the contract being terminated, being liable for the work done by the guarantees up to that time, and for the damages sustained by them in not being allowed to perform the contract on their part. It is settled, then, that the appellant in this case, on the default of Barnes to pay at the end of any month, had the right to ask for the termination of his obligation, and to revoke the same, being liable only for the

amount then payable to the plaintiffs, not to exceed the penalty of the bond. So far, the case of *Phillips* v. *Foxall* and the case in hand are alike. But there is, in my judgment, otherwise an essential difference between them. In this case, it was in the contemplation of all the parties to the bond, that there would be a time, when there would exist a positive liability of the appellant to the plaintiffs, which would require the payment of money to discharge. It was not a contingency. It was a certainty. It was contemplated that the plaintiffs would deliver ale to Barnes, for which he would thereby become indebted, and that his debt therefor would be due and payable at the end of one month. At the expiration of that time, the appellant was liable to the plaintiffs, until payment was made by Barnes or by the appellant himself. It was as certain as if the whole delivery of ale had been made on the first day of a month, and a note taken for the price of it, signed by Barnes and the appellant as surety, payable on the first day of the next month. And so on, from month to month, as long as the agreement remained in force. In *Phillips* v. *Foxall*, there was no certainty of liability ever occurring. It was a contingency. The obligation there did not contemplate as a necessary and foreseen result that there would ensue an indebtedness, of necessity to be discharged only by the payment of money. There, the obligation was, that there should be no breach of duty; it was for the honesty of the principal. Dishonesty and violation of duty were not looked for, as certainly to occur; rather the presumption would be in favor of integrity, and that they would not occur. And a concealment of acts of dishonesty was a hiding from the surety of an unexpected alteration in the condition of his relations to master and servant, which he could not be assumed or supposed to know; so that it may well be, that it was of a purpose that the court, in *Phillips* v. *Foxall*, confined its decision, in terms, to the case of a master and servant, and did not profess to overrule, and did not notice, the preceding cases like *The London Assurance Co.* v. *Buckle* (*supra*).

*Sanderson* v. *Aston* (L. R. [8 Exch.]; 73), which is the other

case cited and relied upon by the appellant, was decided upon the authority of *Phillips* v. *Foxall* (*supra*), and is not materially different from it.  I think that these decisions do not impugn, nor mean to impugn, the soundness of those which I have above cited ; and that upon the principle declared in them, it must be held that the neglect of the plaintiffs to enforce payment either from Barnes or upon the bond of the appellant did not discharge him.  It is not meant by this, to say that laches of a creditor may not be so great and extreme as to amount to fraud, which would be a defence to an action.  See per Tindal, C. J. (in 6 Bing., *supra*) ; and *Duval* v. *Trask* (12 Mass., 154), where it is said, *obiter* perhaps : " Gross negligence in securing the debt may relieve the surety."  There is no finding in this case of gross negligence, or of fraud.  The facts show that Barnes was known to all parties to be insolvent when the obligation was entered into ; and the liability of the appellant was limited ; and there is no finding, or any proof, that the appellant has suffered especial injury from the lenity shown to his principal by the plaintiffs.

Second : The second point of the appellant also maintains, that it was the duty of the plaintiffs to give notice to the appellant of the extent of their dealing with Barnes, and of his failure to make payments at the end of each month.  The considerations already presented have a bearing upon this position.  Furthermore, I think that it is stating the rule as favorably for the appellant as the authorities will allow, to say that after the surety has become bound, it is not necessary for the creditor, even in the case of a continuing guarantee or obligation like that, to give him notice of the several advances or sales made thereupon, from time to time, and of the state of the account while it is running.  Notice is not necessary, until a reasonable time after the default of the principal, or after the whole transaction is closed ; save in particular cases, as where there are contingencies contemplated, the occurrence of which is doubtful, and there is no liability until they occur.  ( *Wildes* v. *Savage,* 1 Story, 22 ; *Douglass* v. *Reynolds,* 7 Peters, 113 ; *Union Bank* v. *Coster's Exrs.,*

3 N. Y., 203; *Paige* v. *Parker*, 8 Gray, 211; *Whitney* v. *Groot*, 24 Wend., 82.) What is a reasonable time, depends upon the circumstances of each case. In this case they are, a knowledge by the surety of the whole transaction in its inception, a fixed limit to the extent of his liability as to amount, a definite time recurring at stated intervals at which the liability may become absolute, the principal obligor insolvent at the time of entering into the obligation, and no change in his pecuniary condition after his default and before notice. In such case, it would seem that the surety was under a duty, to make inquiry and keep informed of the state of the affair. At all events, as one of the main considerations is, whether the surety has suffered loss or injury by want of notice sooner than it has been given, and as he will not be discharged from his obligation further than he has sustained damage from the neglect or omission to give notice, the fact of the insolvency of the principal, and the absence of a finding, or of proof, that the appellant has sustained especial loss or injury by reason of not having had notice, is sufficient to excuse the plaintiffs from earlier notice to the appellant than that given by them at the end of the transaction. (*Howe* v. *Nickels*, 22 Maine, 175.) They did give him notice before bringing suit. It is to be noticed, too, that the cases of *Phillips* v. *Foxall* and *Sanderson* v. *Aston*, fall within one of the exceptions to the rule above stated. The defendants there were respectively sureties for honest conduct and performance of duty. It was not until an act of embezzlement, or breach of duty, that they incurred any enforceable liability. The commission of such an act by their principals was entirely uncertain and contingent, the occurrence of which was doubtful, was not even probable. It may be that, in such case, there should be a duty upon the obligee, soon to notify the surety of the wrongful conduct of the principal, and that neglect to notify should work a discharge. But such is not this case; and in the absence of any loss or injury to the appellant from want of notice, I am of the opinion that he is not discharged by the neglect or omission to give it.

The judgment appealed from should be affirmed, with costs.

All concur, except Church, Ch. J., not voting.

Judgment affirmed.