By the Court.—Sanford, J.
The plaintiffs were under no obligation to demand of the lessees the rent reserved by the lease; or to institute proceedings against them for its recovery; or to notify defendant of its non-payment, before resorting to the remedy against the defendant, as the personal representative of their surety. The undertaking of the defendants’ testator to pay any arrears of rent that might remain due to the lessor or his legal representatives, without requiring notice of default, was express and unqualified. The duty of seeing to it that the rent was paid, was, by the contract, devolved upon and assumed by him. His promise was to pay, in case of default, not after demand or notice, or failure to collect. The right of action against him, and bis legal representatives, accrued immediately upon the lessee’s default, and his or their liability then and thereby became fixed (McKensie v. Farrell, 4 Bos. 192 ; Turnure v. Hohenthal, 36 N. Y. Superior Ct. R. 79 ; McKeeknie v. Ward, 58 N. Y. 541). The promise of the plaintiff, John D. Ducker, to let the defendant’s son know if the rent was not paid, did not vary the rights and obligations of the parties, in this respect. It was made, if at all, in 1872, long after the contract, and was purely gratuitous. It did not operate to modify the contract of suretyship, or to exonerate the defendant from the obligations thereof. The guaranty was under seal, and until breach, a contract under seal cannot be discharged or even modified by parol (Clough v. Murray, 3 Rob't. 7; Kuhn v. Stevens, 7 Robt. 544). It was, moreover, a mere nudum, pactum, void for want of consideration.
Nor was the defendant discharged by the omission *243 of the plaintiffs to enforce by execution the judgments recovered by them on October 6, 1874, nor by the countermand of such executions. Proceedings under the judgments were stayed by order of the court in which they were rendered, before such executions were issued to the sheriff. No levy was made, and no lien was acquired under them. The plaintiffs impaired no right of the defendant, in countermanding executions which they were prohibited from issuing by an order of the court, even though such executions were issued in ignorance of that order. The judgments were allowed to stand merely as security, and it is apparent that they could never have been sustained or enforced, had the suits proceeded to trial, after the inquests were set aside. The complaints showed no cause of action, and were demurrable for insufficiency. They would have beau dismissed on motion, had the cases been brought on to be tried. If, therefore, a technical lien was acquired by issuing the executions, the defendants sustained no injury by reason by its abandonment. The ground on which a surety’s liability^ is discharged by the surrender of securities held by the creditor of his principal, is that his right of subrogation is thus impaired or adversely affected. His contract is strietissimi juris, and the creditor can not be permitted to interfere with security to the benefit of which he is entitled. But the surrender of a security operates as a discharge only pro tanto. Hence, if an apparent lien be, in reality, invalid, or not susceptible of enforcement, either by the creditor, or byr the surety on succeeding by subrogation to the creditors’ rights, the liability of the surety is not affected by its extinguishment. Thus in Blydenburgh v. Bingham (38 N. Y. 371), if was held that the surety of a judgment debtor was not discharged by the release from the operation of the judgment, of lands in which it was supposed that the judgment debtor might have some *244 contingent interest, when it appeared that, in fact, he had no such interest, and that the judgment did not constitute such lien. . So here the judgments upon which the executions were issued, standing merely as collateral security for such recovery as might thereafter be had in the suits wherein they were obtained by default, and it being apparent that no recovery could have been had in such suits, for the reason that the complaints therein did not state facts sufficient to constitute a cause of action, it is manifest that if the defendant had paid the debt of his principal, and had thus been subrogated to all the rights and remedies of the plaintiffs, he could have derived no benefit or advantage from such executions, and he wa,s, therefore, in no wise prejudiced by their countermand. Again, the property, or partnership interest of Wing (one of the lessees and judgment debtors), upon which the executions in question are claimed to have constituted liens, is shown to have been of no value, by reason of the insolvency of his firm.
He failed in the latter part of October, 1874, almost immediately after, and notwithstanding the countermand of these executions, and in consequence of judgments against him which he could not pay. He testifies that at the time when the executions were issued, he believed himself able to pay his debts in full, but that his judgment and belief in that respect were based upon a valuation of his property which has since proved to be erroneous. There was no conflict of testimony upon this or any other question of fact, and the jury would not have been justified in finding from the evidence that the defendant sustained an appreciable loss by the countermand of the executions, even supposing them to have been regularly issued, and to have constituted valid liens.
The stipulation of October 21, 1874, which is claimed to have constituted a valid extension of the *245 lessee’s time of payment, was entered into by and between the parties to the suits, in which the judgments above mentioned were recovered by default, and was signed on behalf of the plaintiffs in such suits, by their attorneys of record therein. It may well be doubted whether such attorneys had the right to represent or act for the plaintiffs in any other capacity, than that of executors, the suits having been brought by the plaintiffs in that capacity alone. As executors, the plaintiffs had no right to, or interest in the rents, and could make no valid agreement with respect to them. Representing them in that capacity only, their attorneys may well be supposed to have exceeded their authority, in attempting to contract for an extension of the time within which such rents might be paid.
Only the widow and trustees under the will had power over the rents, and an attorney, retained by and' appearing for them, to prosecute a suit in their capacity of executors of the will, can scarcely be presumed to have been duly authorized to represent them individually or in their capacity of trustees. There is no evidence of authority in the attorney to stipulate at all, except such as maybe inferred ex mrtute officio. And without express authority, an attorney has no right to bind his client by a promise of forbearance. Certainly no such authority extends to matters outside of the suits, in which the stipulation is entitled. The true test in such cases, is the inquiry, whether upon subrogation, the surety would have the right to proceed at once against the principal. I think the pendency of actions in favor of plaintiffs, as executors merely, would not operate in abatement of a suit brought by the surety after payment of the rent to the widow and trustees, as such; nor wpuld the surety be bound or affected by any stipulation, entitled in such suit and signed by the attorneys of record of the plaintiffs therein, even with respect to the subject matter of such *246 suit; much less would his rights or remedies be impaired, by a stipulation entitled in such suit, and signed by the attorneys of record therein as respects matters wholly dehors the record.
But, assuming the sufficiency of the attorney’s authority to stipulate, the stipulation itself does not in terms purport to extend time of payment of the rent. It provides that “ all proceedings on the first judgment are to be stayed until November 25, 1874, and upon second judgment, until January 10, 1875. By the previous order of October 9, all proceedings under both judgments were stayed indefinitely, and the defendants were allowed to come in and defend. As we have already observed, there could have been no recovery in favor of the plaintiffs, had the suits been contested. The plaintiffs sued as executors, and as such, they neither had, nor averred any right or title to the rents. The effect of the stipulation, therefore, was rather to limit than extend the stay, and thus to hasten rather than retard collection. Besides, it affected only the particular remedy, and did not impair the right. The remedy was valueless; the stipulation rendered it effective. There was, however, in the stipulation nothing to preclude the discontinuance of the suits, or the commencement of other suits by the plaintiffs in their capacity of widow and trustees,—or by the defendant here, had he acquired the rights of the widow and trustees by subrogation. I do not think the stipulation can be construed as a valid extension of time of payment of the accrued rent, and with respect to the rent accruing in November following, it was clearly beyond the authority of the attorneys.
The refusal of the plaintiffs to undertake the collection of the rent payable by the lessees, from the under tenants of such lessees, is a matter of which the surety has no right or reason to complain, nor was he entitled to any notice, either of the offer or its refusal. Under the *247 authority of the recent case of Clark Admr. v. Sickler Admr., N. Y. Weekly Digest, vol. 232, April 17, 1876 (decided by the court of appeals, February 23, 3876), no mere indulgence to the debtor, or omission to act on the part of the creditor, in the absence of an express request from the surety, operates to effect the surety’s discharge. In that case, the maker of a guaranteed, note went to the holder with the money due thereon, and offered to pay it, but the holder declined to receive the money, giving as a reason that he had no use for it, and requested the debtor to keep it. The guarantor was held liable, notwithstanding the subsequent insolvency of the debtor. The case seems to be the most rigid adjudication of a surety’s liability which has hitherto been made in the courts of this State, and as an authority, it j ustifies fully the actions and omissions of the plaintiffs herein.
Judgment ordered upon the verdict, with costs,
Curtis, J., concurred.