By the Court.—Neilson, Ch. J.
I am of opinion that the judgment and order from which these appeals were taken should be affirmed.
When the defendant put in the switch to turn their cars at the desired point, they had occasion to take up the cross-walk, part of the pavement of the street. They were bound to replace it with especial reference to the fact, that as the tongue or guard of the switch projected higher than the track of the rail *35 road, the pavement should have a corresponding elevation. On the trial the defendants sought to show that they had placed the stones up to the necessary grade. Some of their testimony tended to prove that fact, some of it to prove that the stones were only brought up even, with the track. On behalf of the plaintiff there was testimony to the effect that the stones were not laid up to the top of the switch, that when the sand and gravel on the surface had been swept off, the tongue of the switch was so exposed that, soon thereafter, persons crossing the street tripped and fell. At that time the cross-walk, but for the projecting iron, would seem to have been in good order, but the depression, if slight at first, increased from the use of the street and from natural causes, so that the tongue of the switch extended more than two inches above the stones, when the plaintiff, coming in contact with it, was injured as stated in the complaint.
For the purpose of this case the railroad at that point is to be regarded as having been that of the defendants, as having been maintained and operated by them. The switch had been laid under a license duly granted. The body of it was so placed that it conformed to the track of the Brooklyn City Railroad ; the cars of the latter company passing over its entire length, the cars of these defendants over a part of it. But the tongue or guard of the switch, the sole office of which was to turn the defendant’s cars to their track in Washington street, was in the exclusive use, control and management of these defendants. They had put it there, they could have removed it and substituted another switch or a simple rail; it belonged to them.
In thus placing their switch these defendants were under an implied obligation to have it properly arranged and protected, made safe and kept so (1 Daly, 148; 3 Id. 278). They had no right to maintain and use it in such a condition as to interfere with and be *36 injurious to persons crossing the street. The tongue of the switch projecting above the cross-walk was an obstruction for which there was, and could have been, no authority.
On the trial the negligence of the defendants was regarded as essential to their liability. The case was thus properly distinguished from a class of cases in which it was held, as in Creed v. Hartmann, 29 N. Y. 591, and in Congreve v. Smith, 18 Id. 79, that parties who for their own purposes and without authority changed the condition of streets, to the prejudice. of others, might be liable for damages irrespective of the question as to their negligence; and from cases like Reg. v. The United Kingdom E. T. Co., 9 Cox's C. L. C. 174, where the unauthorized erection of telegraphic poles in the street was held to be a nuisance ; and The King v. Wright, 3 B. & Ad. 681, where Lord Tentebdeít, Ch. J., regarded the planting of trees and hedges in the unused parts of the highway, without permission, as worthy of punishment. The sovereign care is devoted to the preservation of the streets for public use, and the distinction between the absence and the abuse of authority is not very marked, save as to the proof and the form of the remedy. That which may seem to impair the street, if duly authorized, is not a nuisance ; that which departs from the line of duty to the prejudice of the citizen, may give rise to a claim for damages. Thus it is that while these defendants were not mere intruders, the manner in which they performed their work and kept and used their switch is to be considered with reference to the question of negligence. If they had been blameless in both respects the license which justified them in interfering with the street would be a protection, otherwise not. In the cases of Fletcher v. The Auburn & S. Railroad Co., 25 Wend. 462, and of Brown v. The Cayuga & S. Railroad Co., 12 N. Y. 486, the legisla *37 ture had authorized one of the defendants to build it's road across a street, the other over a water-course, but each company was held liable in damages by reason of the character of the work performed, and of the improper erections held and used. The same principle applies here.
It is no answer to the charge of having maintained a dangerous obstacle in the street,- that the defendants had not, in terms, undertaken to repair the street or cross-walk, but that that duty rested upon the city and the Brooklyn City Railroad Company. If the city and that company should have intervened and so kept up the flagging that the tongue of the switch would have been harmless, the right of this-plaintiff to seek redress from these defendants was as blear as though there had been no other wrong-doer to be pursued (Carpenter v. The Central Park N. &. E. River R. R. Co., 11 Abb. Pr. N. S. 416).
The general instructions given to the jury appear to have been satisfactory, as no exceptions were taken. But at the close of the charge, the learned presiding judge had occasion to speak to several requests of the defendants’ counsel which relate to this branch of the case. Taken as a whole the answers to these requests were not unfavorable to the defendants,- nor did they, as the learned counsel for the defendants suggests, fix upon them the duty of repairing the street or crosswalk. The jury were told that if the cross-walk had been relaid in such a way that no accident could occur by the switch, 'the defendants were not liable)- and that they were to determine whether the work was "properly and skillfully done or not; whether the defendants had failed to keep their track or switch in order. And upon Ms attention having been called to an observation understood to mean that the defendants were to repair the cross-walk, the learned judge said, as his interpretation, that he did not mean the general track out *38 their part of it, to keep their switch in order. He further said that it was the defendants’ business to keep their switch on such a grade with reference to the street as to avoid accidents. The answers given to inquiries by the jury are to be taken in the same sense. That those instructions did not relate to the repairing of the street or walk as such, is further evident from the answer given to the request to charge that it was not the business of the De Kalb Avenue Railroad Company (as these defendants are informally called) to keep the cross-walk in repair: “Ho; they have nothing to do with the paving.”
It was not a question as to the mere duty to repair the street. The spirit of the instructions given was, that the defendants were to keep their switch, or, what is the same thing, their track in order. It is obvious that they were to do whatever was necessary, whether by removing the switch, by adopting one with a lower tongue, or by so fencing it in as to render the street reasonably safe for use.
They were bound to do something; they did nothing. If the court had erred in suggesting a remedy that would not be material. The defendants should have devised some mode of obviating the difficulty or have abandoned the use of the switch. The repairing of the cross-walk was mentioned because of its relation to the switch ; the flagging as intimately related and necessary to the switch, as if part and parcel of it; that repairing was the most obvious, simple and economical alternative presented. It would have been just and logical to have said that the defendants had no right to have and use the switch disconnected from the flagging, forming a part of the cross-walk, whether they were bound to repair the crossing or not. In the language of the court they should have keot their track or switch in order.
But the instructions given by the court are not to *39 be weighed and estimated with reference to isolated and particular expressions, but with regard to their entire scope and effect (Sperry v. Miller, 16 N. Y. 407).
I think that the jury might well have found that the cross-walk had not been properly laid when the switch was put down, and that although the defendants had notice of the dangerous condition of the switch they paid no attention to it.
I am of opinion that the question whether the plaintiff was chargeable with contributory negligence, was one of fact rather than of law. The circumstances and the inferences to be drawn were peculiarly proper for the consideration of the jury.
It appeared on the trial that the plaintiff had often crossed the street, that he had known there was a switch in the track"; but his attention had not been called to it specially; he had not inspected it or known that persons had fallen there, and that his attention was not, at the time, diverted by carriages or anything else. It also appeared on the cross-examination of the plaintiff, that the street which he was crossing was “much used by foot passengers, cars and carriages, vehicles of all kinds,” involving “much trouble.” The plaintiff states that in crossing he “was looking forward, across the street and up and down for cars and carriages.” The situation called for a vigilant yet divided attention (58 N. Y. 541; 64 Id. 524).
I think that under the rules and principles stated in those cases the learned judge was not bound to determine, as matter of law, whether the plaintiff knew that the place he was crossing was dangerous,whether want of attention to the switch was to be ascribed to forgetfulness, and if so whether want of memory was equivalent to want of care, and whether or not under all the circumstances the plaintiff had or had not acted with such care and foresight as men *40 of ordinary prudence would use if placed in the same situation.
As I apprehend, want of diligence is not to be legally inferred from the failure of a party to discover and avoid a danger which reasonable persons might chance to overlook.
The case of Driscoll v. The Mayor, &c. of N. Y., 11 Hun, 101, is a direct authority as to this branch of the case. Two of the circumstances differ. In this case the plaintiff was crossing the street in daylight; in the other case the plaintiff’s inestate was going on the side-walk in the evening; the one had occasion to have in mind the character and use of the street, possibly the sudden approach of carriages; the other had no occasion to apprehend danger save from the surface on which she was walking. But as the reasoning of Mr. Justice Daniels applies, further observations are unnecessary.
Judgment and order affirmed with costs.
Reynolds, J., dissented, but wrote no opinion.