THE UNITED STATES PRINTING AND LITHOGRAPH COMPANY, Appellant, v. PATRICK A. POWERS and Others, Respondents.

First Department, July 6, 1923.

Guaranty — action to recover on continuing guaranty — guarantor may terminate guaranty — evidence does not establish termination by notice.

The guarantor in a continuing contract, guaranteeing that the principal will perform its contract and pay any and all of its indebtedness, may terminate the guaranty and thereby limit his liability to such sums as have accrued up to the time of the termination.

In this action on a guaranty contained in a written contract whereby the defendants guaranteed that a corporation in which they were interested would perform its contract with the plaintiff and pay all indebtedness, there was no evidence to establish that the defendants notified the plaintiff of their election to terminate the contract, and the mere fact that a stockholder of the principal who was a note broker and acted for the plaintiff in that capacity was present at a meeting of the board of directors of the corporation whose account was guaranteed and was informed by one of the defendants that he would not continue to guarantee the accounts of the corporation, was not such notice as the law requires the guarantor to give in case he desires to terminate the contract.

APPEAL by the plaintiff, The United States Printing and Lithograph Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 26th day of June, 1922, upon the verdict of a jury, and also from an order entered in said clerk's office on the 15th day of June, 1922, denying plaintiff's motion for a new trial made upon the minutes.

*Ehrich, Wheeler & Walter* [*Manfred W. Ehrich* of counsel], for the appellant.

*Ingraham, Sheehan & Moran* [*Samuel F. Moran* of counsel; *Carl A. Rood* and *John D. Monroe* with him on the brief], for the respondent Patrick A. Powers.

*Thomas & Friedman* [*Abel Cary Thomas* of counsel; *Harold S. Bareford* and *Avrom M. Jacobs* with him on the brief], for the respondents Harry M. Warner and Albert Warner.

MERRELL, J.:

The action is brought upon a guaranty contained in a written contract entered into between the plaintiff and the defendants on the 26th day of August, 1913.

The plaintiff is a foreign corporation organized under the laws of the State of Ohio and doing business in the State of New York under due authority. The plaintiff was engaged in manufacturing and selling lithographs and posters, and for some time prior to the making of said contract, furnished posters for a moving picture corporation known as Warners Features Film Company. The film company was owned and controlled by the defendants Harry M. Warner and Albert A. Warner. On August 26, 1913, the aforesaid corporation was indebted to the plaintiff for a balance due for posters in the sum of $10,859.38. Prior thereto the defendants Warner and Powers and one Louis J. Selznick organized a new corporation known as Warner's Features, Inc., which succeeded to the business of the old company and assumed its liabilities. The defendant Powers was made president of the new company, the defendant Harry M. Warner treasurer, and Selznick eventually became its manager. Prior to August 26, 1913, preliminary negotiations were had between the parties relating to the continuation of business with the new company. The new company made a request to the plaintiff for a loan of $25,000, and there is evidence to the effect that it was the understanding between the parties that, if the loan was made, the plaintiff should do all the lithographing work for Warner's Features, Inc. On August 26, 1913, the parties met and three agreements were prepared and executed. The business was transacted in the office of Crocker & Wickes, attorneys. These contracts were offered in evidence. One of these agreements provided that for a period of three years the plaintiff should have the option to do all of the lithograph work for Warner's Features, Inc., at fair and reasonable rates. The second contract is between the plaintiff and Warner's Features, Inc., and provides that, in consideration of the payments therein agreed to be made, the plaintiff should print and furnish to the company printed matter

First Department, July, 1923. [Vol. 206

for each and every motion picture release issued by the film company. The third agreement is the one containing the guaranty sued upon. This agreement was executed by the plaintiff, of the first part; Warner's Features, Inc., of the second part; Patrick A. Powers, of the third part; Harry M. Warner, of the fourth part; and Albert A. Warner, of the fifth part. The agreement provided for the loan of $25,000 by the plaintiff to the film company, which sum the film company promised to repay plaintiff in installments. The contract further provided as follows: " The parties of the third, fourth and fifth parts guarantee the performance of this contract by the Film Company and the payment of any and all of its indebtedness to the Lithograph Company, granting to the Lithograph Company the privilege of extending such indebtedness from time to time as it may see fit and taking or surrendering security therefor." The plaintiff has at all times claimed that the aforesaid guaranty was intended to cover all indebtedness for lithographs furnished by the plaintiff to the film company under the aforesaid agreements. The defendants, on the other hand, assert that the guaranty applied only to the $25,000 loan mentioned in the agreement containing the guaranty, and the existing indebtedness of Warner's Features, Inc., for lithographs and printing furnished to the old company.

Since issue joined the case has been twice before this court. The first appeal thereafter was from an order sustaining a demurrer to the third amended complaint. This court held (183 App. Div. 513) that the guaranty clause above quoted was ambiguous; and that, without evidence of the surrounding circumstances tending to show the purpose and intent of the parties, it was impossible to say whether the guaranty applied to the indebtedness for which the action was brought, or was limited to the indebtedness specifically mentioned in the instrument. The complaint was then again amended, and the case coming on for trial, a verdict was rendered in favor of the plaintiff against all of the defendants for the sum of $50,437.22, the full amount of the plaintiff's claim. The trial justice set aside this verdict on the ground that it was against the weight of the evidence in respect to the issue of an alleged release of the defendants Warner, and granted a new trial. The case was then retried and a verdict rendered against all of the defendants for the full amount claimed. The trial justice set aside this verdict as to the defendants Warner, on the ground that it was against the weight of evidence on the issue of their alleged release. The verdict was permitted to stand as against the defendant Powers. Judgment was entered upon this verdict, and an appeal was taken to this court, where the judgment was unanimously affirmed. (196

App. Div. 934.)   On appeal to the Court of Appeals the judgment was reversed and a new trial granted.   (233 N. Y. 143.)   The Court of Appeals, however, agreed that the guaranty clause contained in the aforesaid contract was ambiguous, and that the intent and meaning of the parties should be determined by the jury.   The case was then tried for the third time, and the jury brought in a verdict in favor of the plaintiff.   By its verdict the jury limited the plaintiff's recovery to the amount due to the plaintiff on January 29, 1914, after applying all subsequent payments against the amount then due.   The verdict so rendered was upon the theory that on January 29, 1914, the defendants had disclaimed liability under the general guaranty, and had notified the plaintiff to that effect.   The jury found that the defendants Warner were not released, which fact, however, is not material to this appeal.   The learned justice presiding at the trial submitted two questions to the jury, as follows: "*First*, whether the guaranty in suit, that is, the contract of August 26, 1913, signed by these three individual defendants and the plaintiff in this litigation covered the indebtedness arising for materials sold by the plaintiff to the Warner's Features, Inc., after that contract was executed.   The second question that you are called upon to determine is whether an agreement had been made by plaintiff releasing the defendants Warner from liability thereon, either with or without the consent of Powers."

Later, upon the request of counsel for the defendant Powers, the court charged: " If the defendants were guarantors of claims and demands arising for advertising matter furnished, they had a right to revoke their guaranty at any time and thus limit their liability to the claims then accrued; " with the following modification: " But they would be liable up to the time of their act and then it would become the duty of the plaintiff to minimize the damages as much as possible."

The court further charged: " That if you find that Powers took the position at any time that he was not personally liable, the plaintiff could not recover for any goods furnished after that date; " and that " The defendants are entitled to have payments made applied in payment and satisfaction of the oldest items of account. * * * Any payments made would have to go in liquidation of the oldest account."

It is claimed by the defendants that a certain transaction occurred on or about January 29, 1914, which amounted to a notification to the plaintiff by the defendant Powers to the effect that he would not carry the account any further, and was in no respect liable for the payment of advertising matter furnished by the plaintiff to the new company.   The jury brought in the following verdict:

" We find for the plaintiff and that the Warners are not released. We also find the liability of the defendants was limited [to] the amount of the account as of January 29, 1914, with interest."

After this verdict was rendered a discussion arose between counsel and the court in respect to the amount due on the aforesaid date. The court suggested, and counsel agreed, that the jury should be discharged, and that the amount of recovery should be determined by the court after hearing counsel on both sides, and that the amount so determined should be directed by the court in the absence of the jury in the same manner as though the jury was present. The amount found due the plaintiff was thereafter inserted in the verdict.

It having been determined that the contract of guaranty was a continuing one and given to secure future indebtedness without limitation, and that the defendants Warner were not released from liability thereunder, and no appeal having been taken by the defendants from the judgment, it is necessary to determine on this appeal only the question respecting the right of the defendants to terminate their liability under the aforesaid guaranty, and as to whether or not such liability was so terminated.

Although the case has been tried twice and an appeal taken to this court and the Court of Appeals, the plaintiff has not before contended that the defendants did not have the right to terminate their liability at any time. In fact, the plaintiff, prior to the last trial, strenuously insisted that the defendants could have terminated their liability at any time. Such argument was advanced by counsel for the plaintiff on the theory that such fact strengthened the plaintiff's case. The appellant contends, however, that even though it be the law of this State that, upon a breach of a contract by a principal, the surety may require the guarantee to terminate his contract with the principal and limit his claim to the amount of damages then recoverable, there is no evidence that the defendant Powers did this, and further that, even if it had been shown that Powers had attempted to terminate his liability on the aforesaid date, the damages allowed by the court were insufficient. The appellant further contends that the claim of the defendant Powers that his liability was limited was a matter of defense which could in no event be available to the defendant unless pleaded.

The case of *Hunt* v. *Roberts* (45 N. Y. 691) is the leading case upon the question of the right of a surety to terminate a contract of guaranty. In that case, as in the case at bar, the principal was in default, and the court said: " Without now determining how far a surety can, before a breach of the engagement of his principal, protect himself from future defaults, we are clearly of opinion that, after a breach which will justify a termination of the contract,

the surety has the right to require that the contract with the principal be terminated, and the claim against the surety confined to the damages then recoverable."

In *McKecknie* v. *Ward* (58 N. Y. 541) the decision in the *Hunt* case was approved, and the court said: " It is settled, then, that the appellant in this case, on the default of Barnes to pay at the end of any month, had the right to ask for the termination of his obligation, and to revoke the same, being liable only for the amount then payable to the plaintiffs, not to exceed the penalty of the bond."

In *Emery* v. *Baltz* (94 N. Y. 408) the action was upon a bond executed by the defendants as sureties for the faithful performance of the duties of an agent, and the rule respecting the right of a surety to terminate his liability was stated as follows: "A surety bound for the fidelity and honesty of his principal, and so for an indefinite and contingent liability, and not for a sum fixed, and certain to become due, may revoke and end his future liability, in either of two cases, viz.: first, where the guaranteed contract has no definite time to run; and, second, where it has such definite time, but the principal has so violated it and is so in default that the creditor may safely and lawfully terminate it on account of the breach. (*Hunt* v. *Roberts*, 45 N. Y. 691; *McKecknie* v. *Ward*, 58 id. 541; *Burgess* v. *Eve*, L. R. 13 Eq. Cases, 450; *Phillips* v. *Foxall*, L. R. 7 Q. B. 666; *Sanderson* v. *Aston*, L. R. 8 Exch. 73.) " The following cases are also in point: *Picker* v. *Fitzelle* (60 App. Div. 451); *Mamerow* v. *National Lead Co.* (206 Ill. 626).

The appellant upon this appeal concedes the general rule that, when a principal does not perform his contract, the surety need not stand by and permit the guarantee to carry his contract to completion, and thus make the surety liable for the full amount. The appellants contend, however, that the defendant Powers did not legally terminate his liability under the contract. No written notice of any kind was served upon the plaintiff by any of the defendants, which in any way referred to the termination of the defendants' liability as guarantors under the contract. The defendants rely entirely upon the testimony of Frank L. Crocker, an attorney, called by the plaintiff to identify a copy of certain minutes of a meeting of the board of directors of Warner's Features, Inc., held on January 31, 1914. As above stated, the court charged the jury that, if Powers took the position at any time that he was not personally liable, the plaintiff could not recover for any goods furnished thereafter. It is obvious, however, that the position taken by Powers, to be effective, must have been final and definite and brought to the knowledge of the plaintiff in such a way as to amount to a notice that he intended to terminate his liability as

guarantor. Crocker testified that he remembered that on the day that the directors' meeting in question was held, Powers said that he had no liability other than to a certain amount, which the witness did not recall; and that Powers stated: " I won't carry this load for you people." The witness said that Powers took the aforesaid position and stuck to it, and that the witness remembered that the position of Powers " dealt with his liability to the printing company and with a guaranty, that there was either — $25,000 was the amount that was involved, I think, on some notes.   *   *   * And he said that was the limit of his liability and he would not assume anything else." · At this meeting of the directors, at which the aforesaid statement is claimed to have been made, one W. D. Campbell was present. It is claimed by the respondents that Campbell in some way represented the plaintiff and caused the statement made by Powers to come to the plaintiff's notice. The witness Crocker was attorney for the plaintiff at the time the guaranty agreement was prepared, and was also the attorney for Warner's Features, Inc. Crocker was called by the plaintiff for the purpose of proving certain alleged admissions on the part of the defendants respecting their liability under the guaranty contract. It was the plaintiff's theory that the resolution adopted at the meeting, and a proposed contract therein referred to, were admissions on the part of the defendants that they were liable under the aforesaid guaranty clause of the contract for printing furnished by the plaintiff after the date thereof. On his cross-examination, Crocker testified to the aforesaid statement made by the defendant Powers. It seems to me that the statement, if made by Powers as claimed, simply bears upon the question as to whether or not Powers then admitted liability. The statement made by Powers, as stated by Crocker, cannot be stretched into a notice to the plaintiff terminating his liability under the aforesaid contract. Moreover, the evidence does not disclose that Campbell was an officer of the plaintiff, nor that he represented the plaintiff in respect to the contract sued upon. Campbell was a note broker who sold certain notes for the plaintiff. There is no evidence in the case to show that at the time of the directors' meeting in question Campbell had any connection whatever with the plaintiff, except as one of its note brokers. Campbell, however, was heavily interested in Warner's Features, Inc. He and his associate Baum held a very large block of the stock of Warner's Features, Inc., and practically controlled its directorate. Some five months before the directors' meeting in question Campbell had been a director of the plaintiff, and at the time when the guaranty contract was signed he had participated in the negotiations for that contract and had selected

Mr. Crocker as the attorney to prepare it. Campbell, however, resigned as a director of the plaintiff on October 20, 1913. As Campbell had so large an interest in Warner's Features, Inc., it was evidently against his interest to notify the plaintiff respecting the alleged statement made by the defendant Powers relating to his liability under the guaranty. In fact, Campbell, Heath & Co., during the following summer, themselves guaranteed the payment for lithographs. Such being the case, knowledge on the part of Campbell of the alleged statement made by the defendant Powers was no notice to the plaintiff. The burden of proof respecting the agency of Campbell was upon the defendants. (*Booth* v. *Litchfield*, 201 N. Y. 466.) There is no evidence that Campbell in any way communicated with the plaintiff respecting the aforesaid statement alleged to have been made by Powers, except that Crocker testified that at the aforesaid meeting of directors, after Powers made the aforesaid statement, Campbell called up the plaintiff's office. There is no evidence as to what Campbell said or whether he got in touch with any officer of the plaintiff. So far as the testimony discloses, Powers made no attempt whatever to personally notify the plaintiff that he desired to terminate his liability under the contract. On the other hand, he was president and managing head of Warner's Features, Inc.; and after the alleged statement claimed to have been made at the directors' meeting in January, 1914, his company continued to order and accept lithographs from the plaintiff of the total value of $38,305.26. If the testimony of Crocker is important at all, it is relevant upon the theory that what took place at the directors' meeting showed that Powers knew that the plaintiff claimed that he was liable under the guaranty, which he had signed, for the purchase price of lithographs furnished after the date of the guaranty contract.

It is the well-settled law of this State that, in order to bind a corporation, notice must be given to an officer or agent acting within the scope of his authority. (*Butler* v. *Michigan Mutual Life Ins. Co.*, 184 N. Y. 337; *Henry* v. *Allen*, 151 id. 1; *Comey* v. *Harris, No. 1*, 133 App. Div. 686; affd., 200 N. Y. 534; *Corrigan* v. *Bobbs-Merrill Co.*, 228 id. 58.) There is also authority to the effect that, although an agent of a corporation may have knowledge of certain facts, such knowledge does not amount to notice to the corporation, if the agent is also acting for his own benefit or for other persons whose interests are in conflict with those of the corporation. (*Brooklyn Distilling Co.* v. *Standard Distilling & Distributing Co.*, 193 N. Y. 551; *Benedict* v. *Arnoux*, 154 id. 715.)

It follows that the evidence will not sustain the verdict of the jury. Such being the case, it is unnecessary to consider the point

raised by the appellant respecting the application of payments made by Warner's Features, Inc., upon the oldest items of the account.

The judgment and order appealed from should be reversed and a new trial granted, with costs to the appellant to abide the event.

CLARKE, P. J., DOWLING, SMITH and McAVOY, JJ., concur.

Judgment and order reversed and new trial granted, with costs to appellant to abide the event. Settle order on notice.