MARIA L. HOOD, as Executrix, etc., Appellant and Respondent, *v.* JOHN N. HAYWARD, Impleaded, etc., Appellant and Respondent.

The provisions of the Code of Civil Procedure in reference to the bring ing of actions upon the bond of an executor or administrator provide three separate and distinct remedies, each independent of the other: First. Where an execution issued upon a surrogate's decree against the property of the executor or administrator has been returned wholly or partly unsatisfied (§ 2607); Second. Where letters have been revoked and a successor has been appointed (§ 2608); Third. Where letters have been revoked and no successor appointed (§ 2609).

The return of an execution unsatisfied is not essential to the maintenance of an action upon the bond of an executor whose letters have been revoked. (POTTER, J., dissenting.)

Where the letters of one of two co-executors are revoked and no successor is required to carry out the express provisions of the will, and none is appointed, as the statute contemplates in such case that the survivor will perform all the duties of the trust (§ 2692), he is the successor of the removed executor within the meaning of the statute, and, as such, can bring an action upon the bond of the latter without the return of an execution unsatisfied. (POTTER, J., dissenting.)

In such an action it appeared that plaintiff and the beneficiaries under the will had executed releases, to one of the two co-sureties upon the bond, from all liability under it to the extent of one-half of the penalty thereof, the releases stating that they were intended to operate as a satisfaction

and discharge of one-half of the obligation or the bond so that the surety should be "released from all claim or demand for contribution on the part of his co-surety." Also, that they should not be construed as affecting in any manner any claim or demand against said co-surety. *Held,* that the releases did not operate to discharge the co-surety; but that he remained liable to the extent of one-half of the penalty of the bond.

The letters were revoked because of misappropriation of the funds of the estate by the removed executor. By the surrogate's decree upon the final settlement of his accounts he was directed to pay a sum exceeding the penalty of his bond. The surety was charged with interest upon one-half the penalty from the time of the misappropriation. *Held,* error· but that he was chargeable with interest from the date of the decree.

Reported below, 48 Hun, 330.

(Argued October 10, 1890; decided January 14, 1891.)

CROSS-APPEALS from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made May 14, 1888, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The plaintiff appealed from so much of the judgment as refused to allow interest from August 1, 1875, or October 1, 1878. The defendant Hayward appealed from the whole judgment. There was no appeal on the part of the defendant Frederick H. Hood.

This action was brought on a bond executed by the defendants Hood, Hayward and one David Moffat upon the issuing of letters testamentary to the defendant Hood as executor of the last will and testament of Andrew Hood, deceased, by the surrogate of Westchester county, to recover damages sustained by the estate in consequence of the misconduct of the executor, Frederick H. Hood.

The plaintiff Maria L. Hood was an executrix and associated with the defendant Frederick H. Hood in the administration of the estate, but the bond was given on behalf of Frederick H. Hood, who was a non-resident at the time of the granting of letters testamentary.

The following facts appeared : Andrew Hood, the testator, died on the 18th day of March, 1864, leaving a last will and

testament, which is set forth in the complaint. The will was duly admitted to probate by the surrogate of Westchester county on the 20th day of April, 1864, and on the 30th day of April, 1864, letters testamentary were issued by said surrogate to Frederick and Maria L. Hood, as executor and executrix named in said will. Upon an accounting had on or about the 6th day of January, 1869, there was found to be in the hands of the executor and executrix assets amounting to $53,000 and upwards, and they were directed by the decree of the surrogate to invest the same in accordance with the provisions of the will. The defendant Frederick H. Hood, executor, had the charge and management of this sum of money, and invested $29,100 thereof in the purchase of real estate situate in the city of Newark in the state of New Jersey, which said sum was wholly lost to the estate. Subsequently and on or about the 7th day of December, 1883, the said surrogate, upon an application for that purpose, revoked the letters testamentary granted to Frederick H. Hood, on account of investments of a portion of the moneys of said estate contrary to the decree of the surrogate made as aforesaid. In the month of May, 1885, the plaintiff instituted a proceeding before the surrogate praying that Frederick H. Hood, executor, account for the moneys received by him, and afterwards and upon the 31st day of July, 1885, the said surrogate made a decree disallowing the said investment of $29,100, and ordering and directing that said sum, together with the further sum of $2,675, amounting in all to the sum of $31,775, be paid by said Hood, executor, to the plaintiff as executrix. Soon after the making of said decree, a copy thereof was duly served upon Frederick Hood, and payment of the money therein mentioned demanded of him, which was refused; and in September, 1885, the said surrogate granted leave to the plaintiff to bring an action on the bond. Moffat was released from any liability on said bond, excepting one-half the penalty thereof, to wit, the sum of $10,000, leaving and reserving, however, and excepting all cause and causes of action against the defendant in this action and all liability under said bond.

The substances of the releases are set forth in the dissenting opinion by POTTER, J. This action was commenced on the 15th day of September, 1885. The answer of the defendant sets forth that the bond was satisfied and discharged as to the defendant Hayward by reason of the discharge and release of said Moffat; that there had been no execution issued and returned unsatisfied · upon the decree made by the surrogate fixing the amount of Hood's liability as executor; that the plaintiff was liable with the defendant Hood for any loss to the estate by reason of the investments above mentioned; the ten years Statute of Limitations and the six years statute were also pleaded. Other facts appear in the opinions.

*John J. Macklin* for plaintiff. The action was properly brought and all the statutory requirements preliminary thereto were complied with. (*Boyle* v. *St. John*, 28 Hun, 455 ; *Sperb* v. *McCoun*, 110 N. Y. 605; Code Civ. Pro. §§ 2481, 2608, 2609, 2610, 2692 ; *Annett* v. *Kerr*, 2 Robt. 556 ; *Haight* v. *Brisbin*, 100 N. Y. 219 ; *McKernan* v. *Roberts*, 84 id. 105 ; *Earl* v. *David*, 86 id. 634.) The provisions of the Code and Revised Statutes relating to the mode of prosecuting executor's bonds affect the remedy only. They may be modified by the legislature, and the remedy in force when the action is brought controls. (2 R. S. 85, 116 ; *Gerauld* v. *Wilson*, 81 N. Y. 573 ; *In re Hood*, 98 id. 363 ; 104 id. 103 ; Potter's Dwarris on Stat. 472 ; Code Civ. Pro. § 2610.) The cause of action is based upon the bond ; the complaint alleges specific breaches thereof and demands judgment for the damages arising therefrom. The action is to be considered, as to whether or not a breach has been committed, irrespective of the proceedings in the Surrogate's Court, which only affect the remedy. The measure of damages is prescribed by statute, and is the loss sustained by the estate in consequence of the executor's misconduct. (*Hood* v. *Hood*, 85 N. Y. 571 ; *Haight* v. *Brisbin*, 100 id. 219 ; 2 R. S. 70, § 42 ; Code Civ. Pro. § 2640.) If the last proposition is not correct, it is claimed that the plaintiff is entitled to recover one-half of the penalty and interest

thereon from August 1, 1875, or October 1, 1878, and that the judgment should be modified by allowing interest from either of these periods. (*Beers* v. *Shannon*, 73 N. Y. 292; *Hood* v. *Hood*, 85 id. 561; *Haight* v. *Brisbin*, 100 id. 219; *Brainerd* v. *Jones*, 18 id. 36; *Thompson* v. *McGregor*, 81 id. 598; *Berg* v. *Radcliff*, 6 Johns. Ch. 307.)   The release to Moffat did not affect or impair the liability of his co-surety, Hayward, for half the penalty and interest. (*Irvine* v. *Milbank*, 56 N. Y. 635; 1 Pars. on Cont. 28, 29; *Benedict* v. *Rae*, 35 Hun, 34, 36; *Bronson* v. *Fitzhugh*, 1 Hill, 185; *Bank of Poughkeepsie* v. *Ibbotson*, 5 id. 462; *Matthews* v. *Chicopee*, 5 Robt. 711; Addison on Cont. [8th Eng. ed.] 1223; Chitty on Cont. 605, 606; *Hoyt* v. *Tuthill*, 33 id. 197; *Harbeck* v. *Pupin*, 55 id. 335, 339; Code Civ. Pro. § 1942.)   The action may be maintained even if the plaintiff were also guilty of a devastavit. (*Wetmore* v. *Parker*, 92 N. Y. 76.)   No judgment based upon the alleged ground that because plaintiff is as is claimed, a joint wrong-doer, she must make contribution could be allowed in this action. (*Boyle* v. *St. John*, 28 Hun, 455; *Sperb* v. *McCoun*, 110 N. Y. 605; *Springer* v. *Dwyer*, 50 N. Y. 19; *Gillespie* v. *Torrance*, 25 id. 306; *Lacher* v. *Williamson*, 55 id. 619; *O'Blenis* v. *Karning*, 57 id. 649.)   None of the grounds upon which the motion for a nonsuit was based are tenable. (*In re Hood*, 27 Hun, 579; *Porter* v. *Kingsbury*, 77 N. Y. 164; *Dawley* v. *Brown*, 79 id. 390; *Stowell* v. *Chamberlin*, 60 id. 272; Code Civ. Pro. § 2743.)

*A. J. Dittenhoefer* for defendants.   The appellant became released when his co-surety, Moffat, was, without his consent, released under seal. (*Bronson* v. *Fitzhugh*, 1 Hill, 185; *Williams* v. *McGinness*, 52 Am. Dec. 561; *Line* v. *Nelson*, 38 N. J. L. 358; *Berry* v. *Gillis*, 17 N. H. 9; *Ayer* v. *Ashmead*, 31 Conn. 447; *McAlister* v. *Dennin*, 27 Mo. 40; *Armstrong* v. *Hayward*, 6 Cal. 183; *Frink* v. *Green*, 5 Barb. 455; *Shaw* v. *Pratt*, 22 Pick. 305; *Frickman* v. *Newhal*, 17 Mass. 580; *A. Bank* v. *Doolittle*, 14 Pick. 123; *Brown* v. *Marsh*,

7 Vt. 320, 327; *Bunson* v. *Kincaid*, 3 Penn. St. 57; *Benjamin* v. *McConnell*, 9 Ill. 536; *Vandever* v. *Clark*, 16 Ark. 331; *Taylor* v. *Galland*, 3 Ia. 17; *Booth* v. *Campbell*, 15 Md. 569; *Cornell* v. *Masten*, 35 Barb. 157; *Schwinger* v. *Raymond*, 83 N. Y. 192; *Barrett* v. *T. A. R. R. Co.*, 45 id. 628; *Woods* v. *Pangburn*, 75 id. 49; *Cockloft* v. *Muller*, 71 id. 367; 1 Story on Cont. § 566; *Bank of Poughkeepsie* v. *Ibbotson*, 5 Hill, 461; *Hoffman* v. *Dunlap*, 1 Barb. 185; Code Civ. Pro. § 3352.) The acceptance of an agreed sum from Moffat and the delivery to him of the release operated as an accord and satisfaction of the entire indebtedness. (*Arnold* v. *Camp*, 12 Johns. 409; *Frisbee* v. *Larned*, 21 Wend. 450; *People ex rel.* v. *B. C. Asylum*, 96 N. Y. 640.) The failure to issue an execution against the executor, Frederick Hood, on the surrogate's decree is fatal to this action. (Code Civ. Pro. § 2607; *Place* v. *Hayward*, 117 N. Y. 487; 100 id. 219; *Hood* v. *Hood*, 85 id. 561, 574; *Haight* v. *Brisbin*, 100 id. 219; *Alexander* v. *Bryan*, 110 U. S. 114.) The court erred in allowing interest against the defendant from the time of the revocation of the letters testamentary of Frederick Hood. (*Clark* v. *Bush*, 3 Cow. 151–155; Code Civ. Pro. § 1915; *Beers* v. *Shannon*, 73 N. Y. 273, 302; *O'Brien* v. *Young*, 95 id. 428; *Sanders* v. *L. S. & M. S. R. R. Co.*, 94 id. 641.) But if the statute can be disregarded, interest certainly cannot be allowed from a period anterior to the decree on the accounting. (*Hood* v. *Hood*, 85 N. Y. 561; *Haight* v. *Brisbin*, 100 id. 219; *Alexander* v. *Bryan*, 110 U. S. 414; *Mansfield* v. *N. Y. C. & H. R. R. R. Co.*, 114 N. Y. 331.) The respondent, as co-executrix, being a joint tort-feasor with Frederick Hood, cannot in this action recover the full penalty of the bond. (*Nanz* v. *Oakley*, 37 Hun, 495; *Earle* v. *Earle*, 95 N. Y. 104–117, 403; *In re Rugg*, 24 Wkly. Dig. 374; *Laroe* v. *Douglas*, 2 Beav. 308; *Schwell* v. *Schenck*, 1 C. E. Green, 181; *In re Niles*, 113 N. Y. 547, 556.) No reply or demurrer having been interposed to the counter-claim the defendant was entitled to judgment thereon. (Code Civ. Pro. §§ 301, 522; *Randolph* v. *Mayor, etc.*, 53 How. Pr. 68; *Matton* v. *Baker*,

24 id. 329; *Prouty* v. *Eaton*, 14 Barb. 309; *Wilder* v. *Boynton*, 62 id. 547; *H. S. B. Co.* v. *L. I. Co.*, 48 id. 355; *Coffin* v. *McLean*, 80 N. Y. 560.) The surrogate not having had jurisdiction at the time the bond was executed, to direct the payment of the money to the respondent, or to entertain on her application the proceedings which resulted in the decree, no action lies thereon against the appellant. (Code Civ. Pro. 2514, 2724; *Annett* v. *Kerr*, 2 Robt. 556; *Nanz* v. *Oakley*, 37 Hun, 495.) The bond not having been assigned to the plaintiff as executrix, or an order made permitting her to sue prior to the commencement of this action, it cannot be maintained. (*Farish* v. *Austin*, 25 Hun, 430; *Schofield* v. *Doscher*, 72 N. Y. 491; 18 Abb. [N. C.] 149.) The wrongful investment on which the decree of July, 1885, is based, was not made by Frederick Hood as executor, but as trustee, for which appellant is not liable. (*Bailey* v. *Bailey*, 28 Hun, 603; *Hurlburt* v. *Durant*, 88 N. Y. 121; *Marks* v. *McGlynn*, Id. 375; *Laytin* v. *Davidson*, 95 id. 263.) The six years Statute of Limitations is a bar to this action. (*Shutts* v. *Fingar*, 100 N. Y. 530; *Clark* v. *Ford*, 1 Abb. Ct. App. Dec. 359; *Drake* v. *Wilkie*, 30 Hun, 537; *Pierson* v. *McCurdy*, 1 Cent. Rep. 175; *Burt* v. *Myers*, 37 Hun, 287–290; *Myers* v. *Budlong*, 70 N. Y. 542–559; *Foote* v. *Farrington*, 41 id. 164; *Drake* v. *Wilkie*, 30 Hun, 537; *Trinity Church* v. *Vanderbilt*, 98 N. Y. 170.) The court erred in permitting proof of alleged acts of misconduct by the executor. (*Haight* v. *Brisbin*, 100 N. Y. 219; *Hood* v. *Hood*, 85 id. 561; *People* v. *Barnes*, 12 Wend. 492; *Annett* v. *Kerr*, 2 Robt. 563.) Appellant's rights as surety being *strictissimi juris* no loose interpretation of the legal questions will be indulged in. (*Ward* v. *Stahl*, 81 N. Y. 406.)

BRADLEY, J. In 1864 the will of Andrew Hood, deceased, was admitted to probate, and letters testamentary were issued to the plaintiff and the defendant Frederick Hood; and the latter being a non-resident of this state, gave bond in which the defendant Hayward and David Moffat joined as sureties.

The executor Hood was afterwards charged with devastavit, and in 1883 his letters were revoked. On July 31, 1885, in a proceeding before the surrogate, instituted by petition of the plaintiff, a decree was made directing him to pay to her as such executrix the sum of $31,100. This action was afterwards brought upon such bond. And the objection is taken that it cannot be maintained, because no execution was issued upon such decree and returned wholly or partially unsatisfied. The disposition of this question is dependent upon the statute by which such remedy is regulated. (Code Civ. Pro. §§ 2607, 2608, 2609.) Those sections provide for three classes of actions upon the official bond of executors and administrators : 1. Where an execution issued upon a surrogate's decree against the property of an executor or administrator has been returned wholly or partly unsatisfied, an action to recover the sum uncollected may be maintained upon such bond by and in the name of the person in whose favor the decree was made. (§ 2607.) 2. Where letters have been revoked, the successor of the executor or administrator, whose letters are revoked, may maintain an action upon his predecessor's bond, in which he may recover any money or the value of any other property received by the principal and not duly administered by him, and to the full extent of any injury sustained by the estate of the decedent. And the money recovered is regarded as part of the estate in the hands of the plaintiff, and must be distributed or otherwise disposed of accordingly. (§ 2608.) 3. Where the letters are so revoked and no successor is appointed, any person aggrieved may, upon obtaining leave by order of the surrogate so to do, maintain an action on the bond in behalf of himself and all others interested. And the money so recovered must be paid into the Surrogate's Court for distribution. (§ 2609.)

These are distinct remedies, and each of them is independent of the others. They were designed to take the place of those given by prior statutes on the subject. Formerly the right to bring actions on such bonds was subject to the direction of the surrogate, or was dependent in the case provided

for it, of an assignment by him of the bond to the person in whose favor a decree was made. When an executor or administrator refused or omitted to perform a decree made against him for rendering an account or upon final settlement, the surrogate might cause the bond to be prosecuted. (L. 1830, ch. 320, § 23; 2 R. S. [2d. ed.] 53, § 19.) The provisions of section 2607 are substituted for section 65, chapter 460, Laws of 1837, which provided that after the return of an execution unsatisfied, the person in whose favor the decree upon which it issued was made, might have a right of action upon assignment of the bond to him by the surrogate. The present statute dispenses with the formal act of assignment. And the provisions of sections 2608 and 2609 seem to be somewhat broader in their import than were those of the former statute which provided for the prosecution of the bond of an executor or administrator whose letters had been revoked. Then it was done by the direction of the surrogate. (2 R. S. 85, § 21.) The actions under such prior statutes other than that of 1837, were prosecuted in the name of the People. Those statutes are referred to in view of the proposition before asserted, that the present remedies are distinct and independent of each other as were those formerly existing. (*People* v. *Guild*, 4 Denio, 551.)

The support of an action under section 2607 is dependent upon the return of an execution unsatisfied. That is not requisite for the purpose of actions within the provisions of the two sections following it. This action does not come within section 2609. The question arises whether it is supported by the provisions of section 2608. And that is mainly dependent upon the fact whether the plaintiff is the successor of the one whose letters were revoked. When her associate was retired from it, the entire trust was devolved upon her. She succeeded to and necessarily assumed all the powers and duties with which he had been vested and charged as an executor, and in that sense she was his successor. There is apparently no reason for denying to her that relation, for the purposes of the remedy in view, unless the statute requires a con-

struction which defeats it. The purpose of the statute giving the right of action to the successor of an executor or administrator whose letters are revoked, is to indemnify the estate of the decedent against loss so far as the means afforded by the official bond of the defaulting representative and the remedy founded upon it will permit. It not only seems that the appointment, if authorized, of a successor to the one of two whose letters have been revoked, would be useless for the accomplishment of that purpose, but such supply of another in that manner in his place is not permitted, except when necessary to comply with the express provisions of a will. The statute contemplates that, except in such case the survivor will perform all the duties of the trust. (Code, § 2692.) And, with that exception, it is only when all the executors or administrators die or become incapacitated, or the letters of all of them are revoked that letters will be granted to one or more persons as their successors. (Id. § 2693.) It follows that unless the survivor may be treated as a successor within the meaning of the statute, the provisions of section 2608 cannot be made applicable to an action upon the bond of one of two or more executors or administrators whose letters have been revoked; and that the remedy upon his bond when there is a survivor, is dependent solely upon the provisions of section 2607. That section provides for an action by the person in whose favor is made a decree against an executor or administrator after the return of an execution unsatisfied. The decree in the present case was not against such an officer, but was made pursuant to the statute providing that, upon the petition of the successor, or of the remaining executor or administrator, the surrogate may compel the *person* whose letters have been revoked to account for or deliver over money or other property, and to settle his account. (Id. § 2605.) It has, however, been held in *Sperb* v. *McCoun* (110 N. Y. 605) that in such case an action may be maintained, under section 2607, when an execution has been issued on such decree and returned unsatisfied. It does not follow, from the determination of that case, that the present one cannot be supported. Nor does the view

in that case necessarily preclude the application of the pro-
visions of section 2608 to the cause of action alleged in this
case, and to its determination by the trial court as represented
by its findings of fact. For the purposes of an action upon
the bond of an executor whose letters have been revoked, the
issue of execution upon a decree and its return unsatisfied are
not requisite to its maintenance. Nor does the application of
the provisions of the statute in that respect seem by its terms
or by reasonable implication to be confined to those cases where
no survivor remains to proceed with the execution of the trust;
and in that view, inasmuch as the statute imposes its perform-
ance wholly upon the latter, the remedy upon the official bond
of him whose letters are revoked is entirely with such survivor.
And to hold that the latter is not a successor within the mean-
ing of the statute, is to deny any remedy under the provisions
of the section last mentioned. No definition of the term
"successor" is given in the statute. There is in other sections
of it upon the subject under consideration some language used
importing its application to a person who receives an appoint-
ment in place of one who has been retired from the position
of trust. But it is not so restricted by anything in section
2608. And, although by a process of reasoning the application
of some provisions of other sections may be so made as to give
to the word successor such restricted meaning, that construc-
tion is not within the evident spirit and purpose of the statute.
The view here taken is that when the plaintiff became the sole
remaining executor, she, for all the purposes of the trust, was
the successor of the one who had been removed, as she suc-
ceeded to all the powers before then vested in him in his rela-
tion to the estate of the decedent, as effectually as they could
be taken by one appointed in his place, if such appointment
were permitted and had been made. And this action was
brought solely for the benefit of the estate, to bring to it a fund
to reimburse it *pro tanto* for the loss it had suffered by the
breach of trust of the principal in the bond while he was
executor, and in violation of the order of the surrogate. Such
money, when collected, is part of the estate and to be dis-

tributed and disposed of under the direction of the surrogate. That is the purpose of an action and recovery under section 2608. And these views lead to the conclusion that this action is within the provisions of that section.

In respect to the other questions, the conclusions of Judge POTTER are adopted to the effect that the release of Moffat did not discharge the defendant Hayward from his liability to the extent of a moiety of the obligation assumed by those persons upon the bond; and that the plaintiff was entitled to recover interest only from July 31, 1885.

The judgment should, therefore, be modified by deducting from the recovery interest upon $10,000 from December 7, 1883, to July 31, 1885, and as so modified affirmed.

POTTER, J. (dissenting). The decision of the main appeal involves two questions : Whether the instrument executed and delivered by the plaintiff and the legatees, under the will of Andrew Hood, to Moffat, one of the sureties upon the bond given by the executor, discharged the liability of the defendant Hayward, the other surety upon said bond, and whether this action upon said bond against the defendant Frederick Hood as principal and the defendant Hayward, as surety can be maintained before the issuance and return of an unsatisfied execution against the property of said Frederick Hood, the executor.

These propositions are familiar law and scarcely need the citation of authorities to support them, viz., that the release of the liability of one or more joint or joint and several obligors, or one or more joint tort feasors, discharges the liability of the other; that the rule is the same in law and equity.

But these rules require for their full operation that the instrument should be a technical release without any valid limitation or restriction. The contention in this case is as to the character of these instruments. Whether they constitute a technical and absolute release, or whether they constitute a release with a valid limitation, or, as more practically stated, whether they release the liability of the surety Moffat and

reserve the liability of the surety Hayward upon the bond, or whether they discharged the liability of both Moffat and Hayward upon the bond.

A reference to the instruments under consideration shows that the plaintiff, as executrix and individually, together with all the devisees and legatees under the will of Andrew Hood, deceased, in consideration of $7,000, to them paid by said Moffat, released and discharged him, his heirs, executors, administrators and assigns from all causes of action, etc., and especially by reason of the said Moffat having executed with one John Hayward and Frederick Hood a joint and several bond to the People of the State of New York in the sum of $20,000, executed by said Hood as principal, and by the said Moffat and Hayward as sureties. The said instrument further provides that this release is intended to discharge said Moffat from all liability by reason of said bond in every respect, "but shall not be construed as affecting any claim or demand which the parties of the first part, or any of them, have or may have against the said Frederick Hood as executor, or against the said John N. Hayward as surety on said bond or otherwise."

The same parties, in addition to signing the instrument, the substance of which is above stated, also executed and delivered to said Moffat another instrument which provided " that it was intended thereby to release and discharge the said Moffat, his heirs, executors and administrators from all liability whatever of any kind and nature arising or growing out of any and all acts or omissions, neglect or defalcation of the said Frederick Hood, whether done or committed as executor, trustee, or in any other capacity, under said last will and testament of Andrew Hood, deceased, or otherwise, but that said release should not be construed as in any way affecting any claim or demand which they (the parties of the first part thereto), or any of them, had or might have against the said Frederick Hood as such executor or otherwise, or against the said John Hayward as surety on said bond or otherwise."

" Now it is hereby declared that the intention of said parties is to release the said David Moffat from any and all claims

which they, or any of them, have or might have against him, his heirs, executors or administrators under or by virtue of said bond, to the extent of one-half of the penalty thereof, and it is expressly understood and agreed that the said release is intended to operate as a satisfaction and discharge of one-half of the obligation arising from or under said bond, so that the said Moffat shall be released from all claim or demand for contribution on the part of his co-surety, the said John N. Hayward, and that this instrument shall be taken and deemed a part of said release and incorporated therein."

" It is also understood and agreed that nothing therein contained shall in any manner affect or impair any claim, right or demand which the parties thereto, or any of them, their, or any of their, heirs, executors or administrators have or may hereafter have against the said Frederick Hood or as against John N. Hayward as to the remaining half of the amount of said bond."

The evidence in the case shows, beyond question and without substantial contradiction, that these two instruments were delivered to Moffat at the same time and upon the occasion of the payment and receipt of the consideration specified in them.

The trial court has found as a conclusion of fact " that David Moffat, mentioned in said bond, has been released from any liability on said bond to the extent of one-half the penalty thereof, to wit, the sum of ten thousand dollars, saving and reserving however, and excepting all cause or causes of action against the defendants in this action and any and all liability thereunder." And, as conclusion of law, that the plaintiff, as executrix, is entitled to judgment against the defendant Hood, the executor, and the defendant Hayward, one of the sureties, for the sum of $10,000 (that sum being one-half of the penalty of the bond) with interest.

The defendant Hayward contends that he was released from all liability upon the bond by the release of the liability of Moffat.

There is no doubt that if the language of the instruments had simply acknowledged satisfaction of all claims arising

upon the bond and released and discharged the same, the effect would have been to discharge both Moffat and the defendant Hayward from any further liability upon the bond. But the language of the instrument acknowledges the payment of the sum of $7,000, being less than one-half of the penalty of the bond, from Moffat, and purports to discharge Moffat only, and expressly declares such to be its sole object and purpose, and that it shall not be construed as in any way affecting any claim or demand which the releasors have against Hood, as executor, or the defendant Hayward, as surety upon said bond; and in order to make this purpose more manifest and its effect more certain, they executed on a later day and delivered with the instrument just referred to another instrument of an equal degree of dignity and solemnity declaring that it was their intention that said instrument should " operate as a satisfaction and discharge of one-half of the obligation from or under said bond, so that said Moffat shall be released from all claim or demands for contribution on the part of his co-surety, the said John N. Hayward," and " that nothing therein contained should in any manner affect or impair any claim, demand or right which they have or may have against said Frederick Hood, or as against John N. Hayward as to the remaining half of the amount of said bond."

It will be observed that the terms of the instrument do not express that the claim or liability under the bond has been satisfied, which is the essential point in an accord and satisfaction. The terms of the discharge by the instrument expressly limit the operation of the discharge to Moffat and reserve the liability of Hayward. I do not perceive any reason in the relations of the parties to this bond, as between themselves or as to the releasors to prevent the court from giving the precise effect to the instrument intended by the parties to it. Each of the sureties was liable to the releasors for the full amount of the penalty and whatever part of the penal sum either should be compelled to pay, he could compel his co-surety to contribute one-half. Aside from interest neither surety could compel the other to contribute more than one-half of

the penalty of the bond, viz.: $10,000, whatever the loss of the estate may have amounted to.

In this case it amounted to much more than the amount of the penalty, so that the releasors could have demanded each surety to pay $10,000. That is the sum which defendant Hayward was liable to pay under the bond, to the releasors, and that is all he is now compelled by the judgment to pay them. What harm or prejudice has or would have been done Hayward in this case, if the releasors had forgiven the liability of Moffat outright or had received $10,000 of Moffat's money and subsequently given it back to him? I can perceive none. Certainly, Hayward could not have sued and recovered of Moffat any part of such gift. The contractual relation between co-sureties is that each shall pay one-half of the amount of the liability assumed. There is no other contractual relation between them; certainly none that entitles one surety to share in the voluntary benefits or presents that the obligee may make the other surety. The question in this case is whether the release to Moffat discharged Hayward. What (if any) rights and remedies Hayward may have against Moffat in any contingency that may arise, need not here be considered.

But without further discussing the reasonableness of the respondent's contention, we think there is an unbroken line of decisions supporting the judgment in this case, to the effect that the defendant Hayward was not discharged by virtue of the instrument which discharged Moffat from liability, upon the bond in suit.

It is not worth while to refer to but few of the numerous cases which maintain this view. (*Benedict* v. *Rea*, 35 Hun, 34; *Irvine* v. *Millbank*, 56 N. Y. 635; *Morgan* v. *Smith*, 70 id. 537; *Bronson* v. *Fitzhugh*, 1 Hill, 185; *Kirby* v. *Taylor*, 6 Johns. Ch. 246; *Matthews* v. *Chicopee Mfg. Co.*, 3 Rob. 711; *Ellis* v. *Esson*, 50 Wis. 138; 36 Am. Rep. 830; *Price* v. *Barker*, 4 Ellis & Black, 760; *Thompson* v. *Lack*, 3 Com. Bench R. 540.)

The great number of decisions and the discussion in the opinions of the courts upon this branch of the law has arisen,

as it seems to me, not from any doubt or diversity of opinion in relation to the effect of an instrument under seal clearly expressing a discharge of one joint obligor in consideration of a sum less than the entire obligation or liability and a reservation of the remainder of the liability against the other obligor, but from a construction of the nature and effect of the various agreements and transactions between one or more joint obligors with the obligee, whether the agreement or transaction shall be held as a full satisfaction of the obligation as to all the obligors or a satisfaction in part and a release of less than all the obligors, or a covenant not to sue one or more of the obligors or whether the instrument affords a presumption of a full satisfaction and discharge of the obligation or whether sufficient in force and dignity to discharge the original obligation. The acts of the legislature from time to time, and as expressed in section 1942, Code of Civil Procedure, are in line with the decisions as respects joint debtors, and under it the presumption is that only the compromising creditor is discharged.

Of the correctness of the decision of the court below in respect to the office and effect of. the instrument given to Moffat by the obligees or beneficiaries of the bond I think there can be no doubt.

The next question to be considered relates to the remedy by which the plaintiff seeks to maintain her right against Hayward. The general rule is that a party must resort to a remedy prevailing at the time the action is commenced to enforce his right. The defendant contends that it was necessary before bringing this action to recover against the surety upon an executor's bond, that the proper surrogate should have made a decree against the executor, and that an execution should have been issued to collect the sum specified in the decree, and that the execution should have been returned unsatisfied in whole or in part.

It is found by the trial court that no such execution had been issued or returned. It will also be borne in mind that

the proper surrogate had made a decree or order directing the executor Hood to pay the plaintiff the sum of $29,100, on account of a loss through mismanagement and revoking his appointment as executor and later made an order granting leave to sue the bond.

" In all the cases of actions on bonds of executors and administrators, a compliance with the statutory formalities has been regarded as essential to the maintenance of an action against the sureties." (*Hood* v. *Hood,* 85 N. Y. 561–574.) All the statutory prerequisites for the commencement of actions upon the bonds of executors and administrators were abolished by chapter 245 of the Laws of 1880, and the provisions contained in the Code of Civil Procedure were adopted in their stead. The orders or decrees of the surrogate revoking the letters testamentary to Frederick Hood, and directing the payment of the sum of $29,100, the loss by his misconduct to the estate of the testator to the plaintiff, and granting leave to her to bring an action upon the bond were made subsequent to the change of the laws relating to the bringing of actions upon such bonds. The laws applicable to that subject are to be found in sections 2607, 2608 and 2609 of Code of Civil Procedure. Section 2607 provides " Where an execution issued upon a surrogate's decree, against the property of an executor, administrator, testamentary trustee or guardian has been returned wholly unsatisfied, an action to recover the sum remaining uncollected may be maintained upon his official bond by and in the name of the person in whose favor the decree was made. If the principal debtor is a resident of the state the execution must have been issued to the county where he resides."

This section manifestly embraces all cases where an order or decree is made by the surrogate for the payment of money by the executor or administrator as formerly existed under the provisions of the Revised Statutes and chapter 460 of the Laws of 1873, and perhaps other statutes upon that subject.

The proceeding under this section is based upon a judgment or decree against the executor or administrator for the payment

of money and the issuing of an execution for its enforcement and the failure of its accomplishment before an action can be brought upon the bond of his sureties. Under that provision it is not now requisite that an order be made by the surrogate granting leave to prosecute the bond or assigning the bond for that purpose.

It is sought to obviate this objection and to maintain the action upon section 2608, which provides that "where letters have been revoked by a decree of the Surrogate's Court, the successor of the executor, administator or guardian, whose letters are so revoked, may maintain an action upon his predecessor's official bond, in which he may recover any money, or the full value of any other property, received by the principal in the bond, and not duly administered by him; and to the full extent of any injury sustained by the estate of the decedent, or of the infant, as the case may be, by any act or omission of the principal. The money recovered in such an action is regarded as part of the estate in the hands of the plaintiff, and must be distributed or otherwise disposed of accordingly; except that a recovery for an act or omission, respecting a right of action, or other property appropriated by law for the benefit of the husband, wife, family or next of kin of a decedent, or disposed of by a will for the benefit of any person, is for the benefit of the person or persons so entitled thereto."

But it seems to me that cannot be done with a proper regard of the plain language of the provision and scheme contained in sections 2607, 2608 and 2609.

As before stated, section 2607 does and is intended to embrace *all* cases where there is a decree against the executor for the payment of money. The money is to be collected by the ordinary process of execution, if practicable, before resort can be had to the bond of the sureties. In this case, the basis of the action is the decree which plaintiff (after revocation of the letters to her co-executor, Frederick Hood) had been granted, and such decree was the only evidence of the loss which the estate had sustained, and was the measure of such loss. Section 2608 has application only to a different class of

cases, to cases where the letters have been revoked by the surrogate, as to all executors or administrators, and where a successor has been appointed, and section 2609 to a case where the letters have been altogether revoked and no successor has been appointed. The language used and the scheme of those sections forbid such a construction of them.

A successor is one who follows another into a position, and not one who went into the position with and survives such other in the position after it has been vacated by such other. Other sections of the Code are only consistent with this construction of sections 2608 and 2609. Section 2605 provides, " * * * the successor may complete the execution of the trust committed to his *predecessor*." " The Surrogate's Court has the same jurisdiction upon the petition of the successor, or of a *remaining* executor * * * to compel the person whose letters have been revoked to account * * * " as was done in this case.

It is provided by section 2692 : " Where one of two or more executors or administrators dies, or becomes a lunatic, or is convicted of an infamous offense, or becomes otherwise incapable of discharging the trust reposed in him ; or where letters are revoked with respect to one of them, a successor to the person whose letters are revoked shall not be appointed, except where such an appointment is necessary in order to comply with the express terms of a will, but the others may proceed and complete the administration of the estate, pursuant to the letters, and may continue any action or special proceeding brought by or against all."

And by section 2693 it is provided that : " When all the executors or all the administrators, to whom letters have been issued, die or become incapable, as prescribed in section two thousand six hundred and ninety-two, or the letters are revoked as to all of them, the surrogate must grant letters of administration to one or more persons as their successors in like manner as if the former letters had not been issued ; and the proceedings to procure the grant of such letters are the same, and the same security shall be required as in case of intestacy,

except that the surrogate may, in his discretion, in case where the estate has been partially administered upon by the former representative or representatives, fix as the penalty of the bond to be given by such successor or successors, a sum not less than twice the value of the assets of the estate remaining unadministered."

Besides the tenor and design of section 2608 prescribe what is to be done by the successor. A surviving executor is already charged with those duties, and there is no occasion to re-charge him. Section 2609 is intended for a case where the letters have been revoked and no successor has been appointed. In the latter case any person aggrieved may obtain from the surrogate leave to prosecute the bond given by the executor whose letters have been revoked, and the duties cast upon such person are conferred in the same language as the duties cast upon the successor under section 2608. And it may be remarked, in considering section 2609, that *it* alone presents a case where the surrogate has any occasion to grant leave to sue the executor's bond under existing laws.

I am reluctantly constrained to the conclusion that the omission to issue execution upon the decree against the executor is fatal to the maintenance of this action against the defendant Hayward, surety upon the bond in suit, for I have an impression that the issuing of an execution against the executor Hood, a non-resident of this state, would have proven a fruitless ceremony.

If the conclusion in relation to the objection that an execution should have been issued and have been returned unsatisfied in order to maintain this action, is correct, the appeal must result in a new trial, and there is not any necessity or perhaps occasion to discuss the question of the amount of interest involved in the cross-appeal. But as I have discussed the question of the effect of the release of Moffat, notwithstanding my conclusion that a new trial is necessary, it may not be amiss to indicate, but without deciding it, the impression of the court upon the subject of the extent of the interest recoverable upon the bond of the surety in suit.

As it appears from the case that the letters of the executor Frederick Hood were revoked December 27, 1883, and the court below has allowed interest upon $10,000, one half of the penalty of the bond and the limit of Hayward's liability, I am of the opinion that the allowance of interest from that date was erroneous. The decree revoking the letters did not necessarily or judicially determine the amount or extent of the loss to the estate arising from the misconduct of the executor whose letters were revoked.

A revocation of letters may be granted for various grounds of misconduct of the executor, and among those grounds are investments made by him in securities not authorized by law or in violation of the decree or order of the surrogate, and regardless of the sum so misinvested. (Code of Civil Procedure, § 2865.)

It appeared, incidentally, from the order of revocation that the executor has misinvested at least the sum of $29,100 of the sum of $53,710.69 which he was directed to invest by the decree of the surrogate dated January 6, 1869. Upon an accounting by the executor subsequent to the decree revoking his letters, upon the petition of the plaintiff as executrix praying for an accounting for the moneys received by him on the 31st day of July, 1883, " whereby, among other things, he disallowed the said investment of twenty-nine thousand one hundred dollars, and ordered and directed that such sum together with the further sum of $2,675, amounting in all to the sum of thirty-one thousand seven hundred and seventy-five dollars, be paid by said Hood to the plaintiff."

This is the period at which the amount of the loss to the estate by the misconduct of the executor and the liability of the defendant, as his surety, was adjudicated, and the executor was on that day directed by the order of the surrogate to pay the amount to the plaintiff.

The executor upon demand of payment of that sum failed to pay it or any part of it. It seems to me very plain upon principle that the interest should begin to run from the date of the last-named decree.

On that day for the first time was the breach of the bond adjudicated and the amount of damages resulting therefrom liquidated. (*Mansfield* v. *N. Y. C. & H. R. R. R. Co.*, 114 N. Y. 331.)

While there was formerly some contrariety of decisions in respect to allowing interest to be added to the penalty of a bond, or more accurately speaking, of allowing the damages to be added to the penalty for withholding it after it was due, I think now it may be regarded as settled law that interest or damages may be added to the penalty from the date at which it is determined there has been a breach of the condition of a bond.

In case the condition of the bond is the payment of money on a day certain, the interest or damages will begin to run from that date, and in case the condition of the bond is that an act shall be performed, the interest or damages will begin to run from the date that it is adjudicated by a competent court that the act has not been performed, and liquidating and fixing the damages caused by such non-performance. The bond in suit belongs to the latter class. It is necessary in this class of bonds that the complaint should allege the act that was not performed, prove the allegation and the damages occasioned thereby. (*Beers* v. *Shannon*, 73 N. Y. 292–302.)

The decree was the evidence of all this and the equivalent of a bond conditioned to pay a particular sum of money upon a day certain, and this court has held that an action cannot be maintained against the surety upon an executor's bond until an accounting has been had and a decree rendered. (*Hood* v. *Hood*, 85 N. Y. 561; *Haight* v. *Brisbin*, 100 id. 219.)

When the amount of the liability in money has been fixed by the decree, it becomes a debt and like a bond conditioned to pay a specific sum of money, and the withholding of its payment will create a liability to pay the damages estimated by law to be equal to the legal rate of interest (*Williams* v. *Willson*, 1 Vt. 266; *Perit* v. *Wallis*, 2 Dall. 252; *Carter* v. *Carter*, 4 Day, 30; 2 Am. Dec. 113; *Smedes* v. *Hooghtailing*, 3 Caines, 48; 2 Am. Dec. 250; *Brainard* v. *Jones*, 18 N. Y.

35; *United States* v. *Arnold*, 1 Gall. 348; *Harris* v. *Clap*, 1 Mass. 307; 2 Am. Dec. 27; *Wyman* v. *Robinson*, 73 Me. 384; 40 Am. Dec. 360), and I think it was upon this theory of the law that section 1915 of the Code of Civil Procedure was adopted upon this subject.

My conclusion is, therefore, that if *plaintiff is* entitled to recover in this action, she can only recover, besides the one-half of the penalty, damages or interest from the date of the decree, which was July 31, 1885, and this difference may, upon this appeal, be deducted and the judgment corrected if the views in relation to the necessity of issuing execution are not concurred in.

A brief consideration of the defenses of counter-claim and the Statute of Limitations will suffice.

The action is brought by plaintiff, as executrix, a trustee. The alleged counter-claim sets forth no facts except, possibly, the fact that the plaintiff, as such executrix, acted with Hood, executor, in the management of the assets and property of the estate, and the legal conclusion therefrom that she is jointly liable with the executor for loss and waste.

It is not alleged in the counter-claim that the respondent ever had any individual interest in the estate, or if she had, that it continued to exist at the time the loss was made by the investment.

As executrix and trustee for others, she may maintain this action notwithstanding any complicity with the misconduct of the executor, and any cause of action against her individually cannot form a counter-claim against her as the trustee for others. (*Wetmore, as Exr.*, v. *Porter*, 92 N. Y. 76; *Sperb* v. *McCoun*, 110 id. 605; *Boyle* v. *St. John*, 28 Hun, 455; Subd. 3, § 502, Code Civ. Pro.)

The reply seems to me wholly inconsequential, and would not constitute a defense or a basis for affirmative relief if it was admitted for want of a demurrer or reply to be true, for the omission to demur or reply will not impart a cause of action or a defense where none was contained in the preceding pleading.

But in this case the trial court refused to find, upon defend-ant's request, that the ·.laintiff had any possession of the fund or any knowledge of its investment until after the loss had been incurred, and the evidence in the case was such as to make such refusal necessary.

If the view I have taken above of the time when the cause of action matured and the defendant became liable to pay interest upon one-half of the penalty named in the bond is correct, that disposes of the defense of the Statute of Limitations.

I think the judgment should be reversed and a new trial ordered, with costs to abide the event.

All concur with BRADLEY, J., except POTTER, J., dissenting, and FOLLETT, Ch. J., not voting.

Judgment modified and, as modified, affirmed.