JOHN WANAMAKER, Respondent, *v.* THOMAS J. POWERS, JR., Appellant.

*Guaranty to "pay on demand, upon the default of the said Emery W. Dye, said monthly accounts on the tenth day of the month" — a demand made within a reasonable time is sufficient — application of payments — notice resulting from knowledge of the insolvency of the person to whom the credit is given — duty to disclose information in respect to such insolvency — effect of a release of one of several independent guarantors — what effects a release — credits for payments by guarantors not released — duty of the guarantor to inquire as to the solvency of Dye.*

In an action brought upon the following guaranty executed by the defendant to the plaintiff:

"In consideration of the firm of John Wanamaker, as now constituted or hereafter formed, granting credit at my request for the purchase of merchandise to Emery W. Dye, at present residing at No. 935 Main street, Peekskill, N. Y., to an amount not exceeding two hundred and fifty dollars per month, I hereby agree to guarantee the payment of, and will pay on demand, upon the default of the said Emery W. Dye, said monthly accounts on the tenth day of the month following said purchases. Notice of separate transactions is waived. This guarantee is to continue from month to month until revoked by me in writing, and the amount due thereon is settled in full to date of revocation.

"Dated the 20th day of *September*, 1901."

*Held*, that the true construction of the guaranty was not that the guarantor should be liable upon the default of Dye, if demand was made on the tenth of the month following the purchases, but that he should be liable for every default which existed on said tenth day of the month, whenever a demand was made upon him within a reasonable time after its occurrence;

That, consequently, the plaintiff having made demand upon the defendant within a reasonable time after Dye's default, the fact that it had not given the defendant notice of such default on the tenth day of the month following the purchases for which it sought to hold the defendant liable did not relieve the defendant from liability, particularly as it did not appear that the defendant had been injured by the plaintiff's neglect to give monthly notices;

That it was competent for the plaintiff in the absence of any directions from Dye, to apply payments made to it by Dye during the term of the guaranty in reduction of an indebtedness due from Dye to the plaintiff at the time the guaranty was executed, and that the defendant was not entitled to complain of such application;

That the fact that the plaintiff knew that Dye was insolvent at the time the payments in question were made did not charge it with notice that Dye could have no means of obtaining money except from the sale of the goods, the purchase price of which had been guaranteed by the defendant, as *non constat*, but that the money had been obtained by Dye from other sources.

That, assuming that the defendant was to be regarded as a cosurety with other persons who had executed to the plaintiff separate and independent contracts to guarantee Dye's purchases, and that a settlement with one of such guarantors would inure to the benefit of the defendant, the payment made by the released cosurety would exonerate the defendant only from so much of the whole debt as the cosurety could have been compelled to pay, over and above the amount which he actually paid, *e. g.*, where the released cosurety was liable for $300 and was released upon payment of $160.72, the defendant was entitled to credit for $139.28;

That evidence that, after the settlement with the surety in question, his guaranty was returned to him and was by him destroyed, established an effectual release of the surety although no formal release was given to him by the plaintiff;

That the defendant was not entitled to be credited with payments made to the plaintiff by cosureties who were not released by the plaintiff, and whose payments were credited to Dye upon his account;

That it was the defendant's duty, when executing the guaranty, to inquire into and become possessed of all the circumstances affecting Dye's financial condition, and that he was not entitled to rely upon the assumption that the plaintiff would voluntarily disclose the information.

APPEAL by the defendant, Thomas J. Powers, Jr., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Westchester on the 30th day of June, 1904, upon the report of a referee.

*Nathan P. Bushnell*, for the appellant.

*Gerard Roberts*, for the respondent.

Judgment affirmed, with costs, upon the opinion of Hon. ABRAHAM R. LAWRENCE, referee.

BARTLETT, WOODWARD, JENKS, RICH and MILLER, JJ., concurred.

The following is the opinion of the referee:

LAWRENCE, Referee:

It is admitted that the balance now due the plaintiff from Dye is the sum of $357.31. It, therefore, follows that if the payments made by Dye to the plaintiff since the execution of the guaranty were properly applied by the plaintiff to the payment of the amount due on the 21st day of September, 1901, the date of the execution of the guaranty, the plaintiff would be entitled to judgment against the defendant in the said sum of $357.31, with interest thereon from the date of demand, if it were not for the discharge of the guarantor Pugsley, hereinafter stated. The date of that demand is

not specifically given, but it is stated to have been before the commencement of this action, which appears to have been about the 6th day of May, 1902. I have, therefore, assumed May fifth as the date of the demand.

The guaranty upon which the action is brought reads as follows:

" In consideration of the firm of John Wanamaker, as now constituted or hereafter formed, granting credit at my request for the purchase of merchandise to Emery W. Dye, at present residing at No. 935 Main street, Peekskill, N. Y., to an amount not exceeding two hundred and fifty dollars per month, I hereby agree to guarantee the payment of, and will pay on demand, upon the default of the said Emery W. Dye, said monthly accounts on the tenth day of the month following said purchases. Notice of separate transactions is waived. This guarantee is to continue from month to month until revoked by me in writing, and the amount due thereon is settled in full to date of revocation.

" Dated the 20th day of *September*, 1901.

" THOMAS J. POWERS, JR.

" Witness, FRANK M. HORTON.

" This guarantee and promise to pay is accepted.

" JOHN WANAMAKER.

Per         ."

The defendant alleges three grounds of defense: *First.* That the plaintiff was bound by the contract to give to the defendant notice on or before the tenth day of the month following any purchase made by Dye, under or in pursuance of the agreement of guaranty, or of any default by said Dye in payment therefor, and that the defendant should not be liable for the amount of such purchases, or for any monthly balance which might be due to the plaintiff from Dye, unless a notice of said default, or of Dye's failure to pay such monthly accounts, was given by the plaintiff to the defendant on or before the tenth day of the month following such purchase, and that such notice has not been given; that by reason of said failure to give such notice defendant has been greatly injured and prejudiced in his rights against his principal Dye, who has been at all times insolvent, and that by reason of such failure Dye was permitted to receive large consignments of goods from plaintiff,

who knew at all times that Dye was insolvent, and that if plaintiff had any such notice defendant would have prevented such consignments and protected himself from liability. _Second._ That at the time of making the guaranty Dye was largely indebted to the plaintiff in a sum exceeding that for which he is now indebted, of which plaintiff did not tell defendant, and of which defendant had no knowledge, and that Dye has paid to the plaintiff, since the date of the giving of the contract of guaranty, a sum in excess of goods purchased by Dye since that date, and that by such payment all liability of the defendant has been paid and discharged; that said sum has been unjustly applied to the payment of said antecedent indebtedness, and that said prior indebtedness was secured by other and prior contracts of guaranty, and that all such payments should have been credited upon the monthly accounts for which defendant is alleged to be liable. _Third._ That the guaranty made by defendant was collateral to other and prior contracts of guaranty made by one Gingles and one Pugsley, whose liability was sufficient to pay the entire indebtedness of Dye alleged in the complaint, and that plaintiff has discharged them from all liability, and that, therefore, defendant has been discharged.

It was held by the Court of Appeals in the case of _McKecknie_ v. _Ward_ (58 N. Y. 541) that " a contract of suretyship for the performance by a vendee of a continuing agreement of purchase and sale by which goods purchased from time to time, as required, are to be paid for at stated periods is not discharged by mere forbearance on the part of the vendor to enforce payment as provided for by the contract without a binding agreement for extension of time. Beyond the bare neglect of the creditor to enforce payment, there must be some act of connivance on his part in a fraud upon the surety, or of negligence so gross as to amount to a fraud." Also : " Nor is it the duty of the vendor to give notice to the surety of the amount of the purchases and of the failure of the vendee to make payment at the times specified, until a reasonable time after default, which depends upon the circumstances of each case, and, in any event, failure to give notice will not discharge the surety further than he has sustained damage in consequence of the neglect."

In this case, conceding that Dye was insolvent and unable to pay his debts at the time the contract of guaranty was executed, it does

not appear that the plaintiff was any party to concealing that fact from the defendant. It was Dye who solicited the defendant to become his surety, not the plaintiff, and the defendant could have protected himself by making proper inquiries of him at the time he agreed to become his surety. The very object of the execution of the guaranty was to enable Dye to obtain further credit from the plaintiff, and it seems to me that it was the defendant's duty to have inquired into and become possessed of all the circumstances, and not to rely upon the plaintiff for voluntarily disclosing the condition of Dye. Nor do I think that, under the guaranty, the plaintiff was required to make a demand upon the defendant for such monthly accounts on the tenth day of the month following said purchases under the rule laid down by the Court of Appeals in *McKecknie* v. *Ward* (*supra*). There is no evidence of fraud in this case, or of negligence so gross as to amount to a fraud. The plaintiff was entitled to a reasonable time to enforce the liability of the defendant by making a demand upon him. The true construction of the guaranty *is not*, in my opinion, that the guarantor should be liable upon the default of Dye, *if demand was made on the tenth of the month following the purchases,* but that he should be liable for every default which existed on said tenth day of the month, whenever a demand was made upon him within a reasonable time after its occurrence.

In the case of *McKecknie* v. *Ward* (*supra*), Barnes was to receive the plaintiffs' ale at the Central railroad depot in Syracuse and pay the freight on the same, "and to pay to said James and Alexander McKecknie, or to some party authorized by them on the first of each and every month, for amount of ale delivered, at a price of one dollar less per barrel than the sum fixed by the said James and Alexander McKecknie for selling such ale after deducting amount paid for freight," etc.

The bond on which the action was brought was conditioned for the performance of said agreement by Barnes. Judge FOLGER, in his opinion, says (at p. 546): " The point is that the conduct of the plaintiffs in allowing the account of Barnes for ale sold and delivered to go on from month to month for three years without exacting payment, according to the terms of the agreement, they all the while knowing that his indebtedness was large and increasing, and

in omitting to give notice to the appellant thereof operated to discharge the appellant from his suretyship.   *   *   * ''

Speaking of the contract, the judge says (at p. 547): "It is not for the payment of a definite sum at a given day; *it is for a continuing transaction contemplating a recurring indebtedness* to be made and extinguished monthly, renewable as often and as soon as paid."

Such is the case here.  The parties contemplated continuing transactions between Dye and the plaintiff, of which accounts were to be rendered to Dye monthly, to an amount not exceeding $250, and it was part of the guaranty that it should continue from month to month until revoked by Powers in writing and the amount due thereon was settled in full to date of revocation.   I do not think that there is any sound distinction between the case at bar and the *McKecknie* case.  Furthermore, there is no proof that the defendant has been injured by the neglect of the plaintiff to give notice of the default of Dye, or to make a demand that the defendant pay the amount or such part thereof as the contract of guaranty called for.   There is no proof that Powers would have stopped or revoked the running of the guaranty if such notice had been given him.

*Second.* As to the payment of the debts due to the plaintiff from Dye at the time the contract was made, it does not appear, in any way, from the evidence before me, that Dye directed how the moneys paid by him should be applied, or disclosed the source from which they came.   It is conceded that on the 20th day of September, 1901, the date of the guaranty, the balance due from Dye to the plaintiff was $1,182.63.   The account introduced in evidence shows that the plaintiff applied all the payments made by Dye in reduction of the amount then due and the amounts which subsequently became due.   It was held by the Court of Appeals in *Bank of California* v. *Webb* (94 N. Y. 467) that " a debtor paying money to a creditor, to whom he owes several debts, must, as a general rule, exercise his option as to the application of the payment at the time it is made," and " if no direction is then given by him, the creditor may control the application, and, as between him and the debtor, there is no limit of time within which he must make the application, save that it be before it is made under the direction of the court, at least unless the debtor requests him to exercise his option."

As before stated, at the time of the various payments made by Dye, no direction was given by him as to their application, and this case, therefore, I think, falls within the principle stated in *Bank of California* v. *Webb* (*supra*). There Judge EARL, in delivering the opinion of the court, after citing several cases (at p. 472), states the general rule as follows : " A debtor paying money to a creditor to whom he owes several debts, may direct the application of the payment *because the money is his and he may do as he will with it and control its application ; but the debtor must exercise his option as to the application when he makes the payment.* After that the money has ceased to be his and is no longer subject to his control. *Then it belongs to the creditor and he is master of it and may control its application.* As between him and his debtor, certainly, unless the debtor intervenes and requests him to exercise his option, there can be no limit of time within which he must make the application ; but if neither party makes any application of the payment and the matter comes into court, then the court will make such application of the payment as equity and justice require."

In this case the plaintiff, having made the application of the moneys, the intervention of the court cannot be had to make a different application. There is nothing in the case of *Orleans County Nat. Bank* v. *Moore* (112 N. Y. 543) which conflicts with, or in any manner alters, the decision of the Court of Appeals in the cases above cited, for the reason that that was a case in which the application of payments was made under the order of the court, no application having been made either by the debtor or creditor. There it was held that " the rule giving a creditor, holding several obligations or claims against his debtor, the right to apply a payment made to him by the debtor, in the absence of any application of the latter, *is confined to cases of voluntary payments.* The proceeds of a sale under a judgment of foreclosure of a mortgage given by the debtor to secure various debts are paid over to the creditor *not as a voluntary payment but by operation of law,* and, in the absence of directions given in the security, their application is to be made by the court in accordance with equitable principles."

I do not find that the authorities sustain the contention of the learned counsel for the defendant that, in order to entitle a creditor, who has received a voluntary payment from his debtor, to apply

such payment upon one of several debts, the intention to make such application must be communicated to the debtor; if the money has been paid by the debtor without any direction as to its application, it becomes the property of the creditor, who may make such application of it as to him seems fit. (*Bank of California* v. *Webb*, 94 N. Y. 472.)

The case of *Allen* v. *Culver* (3 Den. 284), cited by the learned counsel for the defendant, seems to be authority against the proposition for which he contends, as there the court distinctly says: "If the party making the payment do not, at the same time, make any specific appropriation thereof, then the party to whom the payment is made may apply it as he pleases." It is true that the court also said: "The entry of payments by the creditor upon one account does not preclude him from applying them subsequently within a reasonable time to any other account to which he might originally have applied them, *provided that such entry has not been communicated to the party making the payment.* This is upon the ground that the creditor making private entries in his books, which were not communicated to the other party, did not indicate a complete election so to appropriate the payments, but merely an idea of so appropriating them." That is far from being an authority for the proposition that the debtor has anything further to say as to the application of the payment. All that can be said is that it is an authority for the right of the creditor to change his mind after he has made the entry upon his books.

In the case at bar there has been no exercise of such right. On the contrary, the plaintiff has, throughout the account, steadily adhered to the application indicated by the entries, and has affirmed it by the bringing of this action. It is, however, contended that this case falls within the exceptions stated in *Harding* v. *Tifft.* (75 N. Y. 461), in which it was held that if the money had been raised by the debtor by the aid of the indorsement of the surety, given for the express purpose of enabling the debtor to raise funds to pay the secured debt, and these facts had been communicated to the creditor, he would not be permitted, even with the consent of the debtor, to misapply it. The court, however, said in that case (at p. 465): "But it can hardly be disputed that if the debtor brought money thus raised to the creditor and paid it to him expressly upon the

unsecured debt, without disclosing the means by which the money had been raised, or any agreement as to its use, the payment would be valid. I think the same result follows when the debtor, by omitting to specify on which debt the payment is to be credited, authorizes the creditor to apply it to either and the creditor exercises this option." It is argued by the learned counsel for the defendant that, as Wanamaker knew that Dye was insolvent, he is charged with notice that Dye could have no means of obtaining money except by the proceeds of the goods then being sold to him, for which he knew that the defendant was liable. It does not seem to me that this conclusion follows. As I have stated before, the guaranty, which was given by the defendant, was not procured by the plaintiff, but was given at the request of Dye by the defendant. The defendant also knew that it was given for the purpose of enabling Dye to obtain further credit from the plaintiff. If the defendant did not know that Dye would be entitled to pay other debts to the plaintiff than those for which the defendant was liable under the guaranty, it was incumbent, I think, upon him to have it so stipulated. Nor is it shown by the evidence that the plaintiff knew that the money which Dye paid was obtained from the sale of the goods. The account was a running account in which the plaintiff charged for the goods and gave credit for the cash received from Dye, and for aught that the plaintiff knew, it might have been obtained from the other guarantors, or from other friends of Dye.

*Third.* It is further argued by defendant's counsel that the several guarantors, Loder, Goethe, Garrison, Foshay, Bushnell, Strang, Gingles and Pugsley, were cosureties with the defendant, and that the release of any one of them from liability releases all, to the extent that the remaining ones are prejudiced thereby, and the case of *Morgan* v. *Smith* (70 N. Y. 537) is cited on his brief. That case involved a joint contract of suretyship, and it was held that " the obligation of one of two co-sureties is to pay the whole debt. If he does so he may recover of his co-surety one-half ; if he pays less than the whole debt he can only recover from the co-surety the amount which he has paid in excess of the moiety." And, further, " when a co-surety has by the conduct of the creditor been released from liability, another co-surety will be held exoner-

ated only as to so much of the original debt as the one so discharged could have been compelled to pay." The case of *Hood* v. *Hayward* (124 N. Y. 1) was also a case of a joint bond.

Here the contracts of guaranty are separate, independent contracts, but, assuming that the defendant is to be regarded as a cosurety with the other guarantors, and that a settlement with one of them can inure to the benefit of the defendant, if the defendant is a joint surety with the other parties who were guarantors, he can be sued alone for the whole amount due, to the extent of his guaranty, and he can, if he is thus compelled to pay more than he should have paid, bring an action against his cosureties to recover such excess. (*Toucey* v. *Schell*, 15 Misc. Rep. 350, and cases cited.) So, also, if the other guarantors had paid the indebtedness of Dye and are to be regarded as joint sureties with the defendant, the latter could be compelled. by them to contribute in an action brought for that purpose. It is contended, however, that by settling with Pugsley and receiving $160.72 from him and surrendering the guaranty which he had given, the defendant has been released from his liability to the extent of $139.28, Pugsley's guaranty being absolutely for $300. Conceding that Pugsley has been released, the defendant, as a cosurety, is only exonerated from so much of the whole debt as a cosurety who has been discharged could have been compelled to pay over and above his actual payment, to wit, $139.28. (*Morgan* v. *Smith*, 70 N. Y. 539.)

There was no formal release given by the plaintiff to Pugsley, but the guaranty was returned to him and by him destroyed. This, I think, amounted to a release of the surety. (*Larkin* v. *Hardenbrook*, 90 N. Y. 333.) Conceding that the transaction between the plaintiff and Pugsley amounted to a release, it would appear that there should be allowed to the defendant a credit of $139.28. The account (Exhibit 1) which has been put in evidence terminated on the 21st of May, 1902, which was after this action was commenced, and it shows a balance against Dye of $363.92 ; the amount admitted to be due on page 4 of the stenographer's minutes is $357.31. If we deduct the $139.28 from the sum admitted to be due from Dye there still remains a balance due plaintiff from defendant as surety of $218.03.

It is to be observed that the balance of $363.92 shown by Exhibit

1 is arrived at after crediting the sum paid by Gingles, $314.82.  I do not find that there was any release given to him, and, as the amount paid by him is credited to Dye upon the account, the defendant has not been injured, but has been benefited by that payment. There has been no release or discharge of the other guarantors proven, and if the defendant is obliged to pay more than his proportion of the indebtedness of Dye he can, as above stated, call upon them for contribution.

I am, therefore, of the opinion that the plaintiff is entitled to judgment against the defendant for the sum of $218.03, with interest from May 5, 1902.