COMEY v. HARRIS et al.

(Supreme Court, Appellate Division, First Department. July 13, 1909.)

1. PRINCIPAL AND AGENT (§ 178*) — RIGHTS OF THIRD PERSONS — NOTICE TO AGENT.

A mortgagee is not affected with knowledge acquired by his broker at a meeting to negotiate the sale of the premises to the mortgagor, but not in connection with the negotiations, as to the infancy of the owner of the funds used by the mortgagor in making the purchase and paying interest, in the absence of evidence that the broker had this knowledge in mind while acting within the scope of his employment.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 680–684; Dec. Dig. § 178.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. PRINCIPAL AND AGENT (§ 178*) — RIGHTS OF THIRD PERSONS — NOTICE TO BROKER.

A mortgagee is not affected with knowledge acquired casually by his broker, having no authority other than to sell the premises on given terms, as to the infancy of the owner of the funds used by the mortgagor in purchasing the premises and paying interest, though such knowledge was acquired during the negotiations for the purchase.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 680–684; Dec. Dig. § 178.*]

3. INFANTS (§ 30*)—PROPERTY AND CONVEYANCES—RATIFICATION.

Where an infant's funds have been used by a mortgagor in purchasing the premises from the mortgagee, and in paying interest without the sanction of the court, and the infant on attaining his majority takes title to the premises with full knowledge of all the facts, he cannot thereafter rescind and defend against foreclosure of the mortgage or claim equitable lien on the land superior to the mortgage.

[Ed. Note.—For other cases, see Infants, Dec. Dig. § 30.*]

Appeal from Special Term, New York County.

Action by John F. Comey against Maxwell S. Harris and others. From a judgment for plaintiff, the defendant Daniel Harris appeals. Affirmed.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Charles Goldzier, for appellant.

Edward E. Sprague, for respondent.

LAUGHLIN, J. The action is brought to foreclose a mortgage given by the defendant Maxwell S. Harris to the plaintiff on premises at the northwest corner of Audubon avenue and 186th street, in the borough of Manhattan, New York City, to secure the payment of the sum of $40,500, with interest thereon from the 17th day of April, 1905, according to the terms of a bond given by the same defendant to the plaintiff, bearing even date with the mortgage. The bond and mortgage were executed on the 17th day of April, 1905, to secure part of the purchase price of the premises which were at the same time conveyed by the plaintiff to the mortgagor. The appellant interposed an answer in which he pleaded as a defense and counterclaim that the conveyance of the premises by the plaintiff to the defendant Maxwell S. Harris was made pursuant to a contract entered into on the 16th day of February, 1905, between the plaintiff and the appellant's brothers, Herman and Maxwell Harris, who at his request, he being then an infant, made the contract for the purchase of a parcel of land, which included the premises upon which the mortgage was executed and more, for him and with his funds; that he did not become of age until the 13th day of March, 1906; that he had certain money and property which his brother Herman managed and controlled for him; and that the cash consideration consisting of $10,250 was paid with his funds; that title was taken in the name of his brother on account of his infancy; that thereafter sums aggregating $6,075 of his funds were paid to the plaintiff as interest on the indebtedness secured by the mortgage; that he was informed and believed that the premises were thereafter sold at a profit, and did not learn that this was not

true until the 20th day of April, 1907; that he then attempted to disaffirm the transaction by requesting that his brother Maxwell reconvey the premises to the plaintiff, which request was refused; that on the 16th day of May, 1907, his brother Maxwell conveyed the premises to him, and he thereupon tendered a reconveyance of the premises to the plaintiff and demanded the repayment of the moneys received by him out of his funds, which was refused; and that his brothers Herman and Maxwell are insolvent. The appellant demands judgment on his counterclaim that the transaction be rescinded and that the moneys paid to the plaintiff out of his funds be repaid to him, and that the premises in suit be impressed with a trust in his favor superior to the lien of plaintiff's mortgage for his moneys paid to the plaintiff, and that the mortgage be canceled. The trial court dismissed the counterclaim upon the merits, and granted a judgment of foreclosure and sale. We are of opinion that the judgment was right upon two grounds: First, that the plaintiff was not shown to have notice and was not chargeable with notice of the infancy of the appellant; and, secondly, upon the ground that he, appellant, ratified the transaction by taking a conveyance of the premises from his brother after attaining his majority.

The material allegations of the counterclaim were proved, with the exception that the appellant failed to prove the allegation to the effect that he was informed and believed that the premises after title was taken in the name of his brother Maxwell were sold at a profit, and that he did not discover that this was not so until the 20th day of April, 1907. It thus appears that from the 13th day of March, 1906, until he took the deed from his brother on the 16th day of May, 1907, he was of full age and presumably familiar with all of the facts. There is no evidence that the plaintiff had actual knowledge nor is he chargeable with notice of the fact that the appellant was an infant. It appears that shortly before the contract was made, and while the parties were on their way to the title company where it was to be drawn and executed, the defendant Herman Harris, who had negotiated the purchase with the plaintiff's broker, one Smith, in answer to an inquiry as to whether the witness and his brother Maxwell were buying the property in partnership, said:

"Why, no; neither of us were directly interested in it; that I was doing it for a younger brother of mine, and that my brother Maxwell would take the contract in his name."

It does not appear how old either Maxwell or Herman Harris was or how old either of them appeared to be. There was nothing in this remark to convey to the plaintiff the information that the younger brother was an infant. It appears that the plaintiff authorized the broker, Smith, to sell the property at a given price and on given terms, and that Smith conducted the negotiations for the sale of the premises, reporting to the plaintiff with respect to any change of price or of terms of sale proposed by the purchaser, and the plaintiff determined the questions for himself. The plaintiff did not vest his broker with any discretion in the matter or with any authority other than to negotiate upon previously prescribed terms and conditions. It appears

by the evidence that on the 14th day of February, 1905, Smith called upon the defendant Herman Harris at the office of the defendant Maxwell Harris, and submitted a proposition for the purchase of certain real estate which belonged to the estate of the father of the defendants. The offer was not satisfactory, and Smith stated that he would see the party whom he represented again and endeavor to obtain a better offer. At the close of this interview, Herman Harris drew Smith's attention to a prior conversation between them with respect to certain improved property downtown owned by the estate of the father of the defendants, and concerning Herman's desire to dispose of the same and to have the proceeds invested in Washington Heights lots, and stated that his object in bringing the matter up was to endeavor to make an arrangement with Smith to divide commissions on any property that Smith might sell or purchase through him, or that either might purchase or sell for the other, and stated in the course of the conversation that his father's estate was owned by his brother Daniel and his two sisters. They reached an understanding with respect to the division of commissions, and Smith then said to Herman Harris that he had two parcels for sale on Washington Heights, one being the premises in question, and stated the selling price and the terms of sale. It was thereupon understood that Herman should look at the premises the next morning, and, just as Smith was leaving, he asked to see a contract which Herman had informed him that he had made that day for the purchase of lands for his brother Daniel, and, upon being shown the contract and observing that it showed the purchaser to be the defendant Maxwell Harris, instead of Daniel, Smith asked why that was, and was informed that it was done for convenience on account of the fact that Daniel was a minor. It thus appears that this information was not communicated to the plaintiff's broker in connection with the negotiations for the purchase of the premises in question, although it did occur at the same meeting of the parties. The plaintiff, therefore, would in no view of the case, we think, be chargeable with the knowledge thus derived by his broker in the absence of evidence that he had this information in mind while he was doing some act or thing within the scope of his employment as broker for plaintiff. Constant v. University of Rochester, 111 N. Y. 604, 19 N. E. 631, 2 L. R. A. 734, 7 Am. St. Rep. 769; Badger v. Cook, 117 App. Div. 328, 101 N. Y. Supp. 1067; Slattery v. Schwannecke et al., 118 N. Y. 543, 23 N. E. 922; Denton v. Ontario Co. Nat. Bank, 150 N. Y. 126, 44 N. E. 781. Moreover, even though the information were communicated to the broker during the negotiations for the purchase of the premises in question, we are of opinion that the plaintiff is not chargeable therewith, for the broker was not his agent to receive such notice and it was only communicated casually.

Furthermore, we think that, if the plaintiff had full knowledge at the time of the negotiations for the sale of his land that the same was being purchased with the infant's funds, that would not avail the appellant on this record. On attaining his majority, the infant doubtless had a cause of action against his brothers for investing his moneys without the sanction of the court, and he doubtless had an equi-

table lien upon the land purchased with his money, which he could have impressed by a suit in equity. He might also have a right of action against the plaintiff for his moneys which were used in payment of part of the consideration and of interest, provided resort to the liability of the plaintiff were necessary, and the plaintiff had knowledge of his infancy. He cannot, however, we think, after taking title to the premises from his brother, subsequent to attaining his majority and with full knowledge of all the facts, successfully defend against the foreclosure of this mortgage or claim that the lien thereof is subordinate to his rights in the premises. He voluntarily took a step which vested the entire title, both legal and equitable, in him, and he necessarily took title subject to the plaintiff's mortgage, and is not now at liberty, we think—although the point is not taken by respondent—to interpose this defense as against the plaintiff.

It follows that the judgment should be affirmed, with costs. All concur.